## AIKEN v. COMMISSIONER OF INTERNAL REVENUE. *

Circuit Court of Appeals, Eighth Circuit.
October 25, 1929.

No. 8340.

*Rehearing denied January 9, 1930.

Owen Owen, of Tulsa, Okl. (L. E. Cahill, of Tulsa, Okl., on the brief), for appellant.

Randolph C. Shaw, Sp. Asst. Atty. Gen. (Mabel Walker Willebrandt, Asst. Atty. Gen., Sewall Key, Sp. Asst. Atty. Gen., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Stanley Suydam, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., on the brief), for appellee.

Before LEWIS and VAN VALKENBURGH, Circuit Judges, and SYMES, District Judge.

SYMES, District Judge. This is an appeal from a decision of the United States Board of Tax Appeals, sustaining the right of the Commissioner of Internal Revenue to assess and collect from appellant Friend M. Aiken, now deceased, certain alleged deficiencies in income and war excess profit taxes for the calendar years 1917 and 1918, amounting to $51,614.09 for the year 1917 and $986.30 for the year 1918. Since the filing of this appeal, Annette Aiken, as administratrix of the estate of Friend M. Aiken, deceased, has been substituted as appellant, and the word "appellant" where used in this opinion refers to Friend M. Aiken, the original appellant.

#### Facts.

Appellant, a resident citizen of the United States, was, during the years 1917, 1918, 1919, and 1920 engaged in business with his principal offices located at Tulsa, Okl.

On March 30, 1918, he filed with the collector his income and profit tax return for the year 1917.

On March 18, 1919, he filed with the collector a tentative income tax return for the year 1918 and filed his completed return for that year on April 28, 1919.

The assessment for the year 1917 depends upon whether under the following facts income should be determined in the year 1916 or 1917.

On November 10, 1916, the appellant and Henry L. Doherty & Company entered into an agreement evidenced by the following letter:

"Henry L. Doherty & Company,
"Six Wall Street, New York,
"November 10, 1916.

"F. M. Aiken, New York. Dear Mr. Aiken: This is to confirm the understanding reached with you to-day by which you and your associates give us an option, good until February 1, 1917, upon the entire $300,000 of capital stock of the Peerless Refining Company of Oklahoma for $1,250,000.

"In consideration of this option, we hereby tender you our check for $50,000. It being understood that in event of our failure to complete the option on February 1, 1917, this payment is forfeited to you.

"In the event that we exercise the option, this amount paid to apply on the purchase price. During the interim between this date and February 1st all of the earnings of the property to remain with the corporation.

"The financial condition of the property being as set forth in the balance sheet of September, 1916.

"Yours truly,
"Henry L. Doherty & Company,
"By Frank W. Freuauff."

The check for $50,000 referred to in the letter was inclosed with it, and the remainder of the purchase price of $1,200,000 was paid in the year 1917, and the entire capital stock of the Peerless Refining Company was transferred to Henry L. Doherty & Co. in the year 1917.

During the entire year of 1916 Henry L. Doherty & Co. were amply able to finance the matter and to have paid the whole purchase price in the year 1916 upon the exercise of the option.

On February 7, 1921, the appellant filed with the collector the following waiver:

"I, Friend M. Aiken, in consideration of the assurance given me by officials of the Income Tax Unit of the Bureau of Internal Revenue that my liability for all Federal taxes imposed by the Act of Congress, approved September 8, 1916, as amended by the Act of Congress approved October 3, 1917, for the year ended December 31, 1917, on my net income received from all sources in said year shall not be determined except after deliberate, intensive, and thorough consideration, hereby waive any and all statutory limitations as to the time within which assessments based upon such liability may be entered. It is understood, however, that I do not, by the execution of this waiver, admit in

advance the correctness of any assessment which may be made against me for said year by the officials of the Income Tax Unit.

"Friend M. Aiken, Taxpayer,
"[Signed] By E. F. Blaise,
"Attorney-in-fact."

On March 3, 1924, appellant executed and filed with the collector a second waiver, which waiver was as follows:

"March 3, 1924.

"Income and Profits Tax Waiver.

"In pursuance of the provisions of sub-division (d) of Section 250 of the Revenue Act of 1921, Friend M. Aiken, of Tulsa, Oklahoma, and the Commissioner of Internal Revenue hereby consent to a determination, assessment, and collection of the amount of income, excess-profits, or war-profits taxes due under any return made by or on behalf of the said individual for the years 1917 and 1918 under the Revenue Act of 1921, or under prior income, excess-profits, or war-profits tax Acts, or under Section 38 of the Act entitled 'An Act to provide revenue, equalize duties, and encourage the industries of the United States and for other purposes,' approved August 5, 1909. This waiver is in effect from the date it is signed by the taxpayer and will remain in effect for a period of one year after the expiration of the statutory period of limitation, or the statutory period of limitation as extended by any waivers already on file with the Bureau within which assessments of taxes may be made for the year or years mentioned.

"[Signed] Friend M. Aiken, Taxpayer,
"[Signed] By D. H. Blair, Commissioner."

On February 16, 1925, appellant executed two more waivers, one for the year 1917 and one for the year 1916, which were delivered to the collector.

On March 12, 1925, the collector made a jeopardy assessment against the appellant for the calendar year 1917 in the sum of $70,740.88 and a jeopardy assessment against the appellant covering the calendar year of 1918 in the amount of $29,739.39. Thereafter, and within 10 days, the appellant filed claims in abatement with the collector on both assessments, which claims were not accompanied by bonds.

On February 5, 1926, appellant executed an additional waiver covering the years 1917, 1918, 1919, and 1920, which purported to extend the time for assessment until December 31, 1926.

On October 7, 1926, the collector mailed to the appellant a deficiency letter in which appellant was notified that the collector had de-termined an overassessment for the year 1917 of $19,126.79 and an overassessment for the year 1918 in the sum of $28,753.09, leaving due as jeopardy assessments for the years 1917 and 1918 the amounts of $51,614.09 and $986.30, respectively.

On November 25, 1926, appellant filed his appeal with the Board of Tax Appeals from assessment set forth in deficiency letter of October 7, 1926. Three questions are raised by this appeal.

First. Did the Commissioner of Internal Revenue have the right to assess taxes against the appellant at the time such assessments were made?

Second. Although there was found to be a tax liability upon a tax timely assessed and computed in accordance with law, was the collection of the tax by the collector barred by the statute of limitations?

Third. Was the gain derived by the appellant on the sale of stock of the Peerless Refining Company taxable in the year 1916 or in the year 1917?

Appellant's return for the year 1917 was filed on March 30, 1918. On November 23, 1921, the Revenue Act of 1921 was approved. Section 250 of this act, 42 Stat. 264, provides that taxes due under any prior Revenue Act might be assessed and collected within 5 years from the date of the filing of the return due under such law. Without any extension therefor, the collector had until March 30, 1923, in which to make an assessment for the taxes for the year 1917.

Before the expiration of this period, however, appellant filed the waiver of February 7, 1921, which waived "any and all statutory limitations as to the time within which assessments based upon appellant's liability for taxes for the year 1917 might be made."

It will be noticed that this waiver was unlimited as to time, but on April 11, 1923, the Commissioner of Internal Revenue promulgated a ruling known as Mimeograph 3085, which provided in part as follows: "Inasmuch as there are many waivers on file signed by tax payers as to the time for which assessments for 1917 may be made, all such unlimited waivers will be held to expire April 1, 1924."

Before the expiration date so fixed by the Commissioner had arrived, and on, to wit, March 3, 1924, the appellant executed the second waiver, which applied not only to 1917 taxes, but also to 1918 taxes. This waiver extended the period for "determination, assessment and collection" of 1917 and 1918 taxes for "a period of one (1) year after the expiration of the statutory period of limita-

tions, or the statutory period of limitations as extended by any waivers already on file with the Bureau within which assessments of taxes may be made for the year or years mentioned."

Appellant's return for the year 1918 was filed April 28, 1919. By the Revenue Act of 1921, the Commissioner had 5 years, or until April 28, 1924, to assess the 1918 taxes and by the waiver this period was extended to April 28, 1925. As to the 1917 taxes, there was the unlimited waiver of February 7, 1921, the Commissioner's Mimeograph 3085 terminating all unlimited waivers as of April 1, 1924, and the second waiver of March 3, 1924, extending the period for one year after the expiration of the statutory period of limitations, which carried this period to April 1, 1925, so that when the Commissioner's assessment of March 12, 1925, for both 1917 and 1918 taxes was made, it was within the statutory period of limitations as extended by the waivers.

■■ It is contended by the appellant that the waivers were void for lack of consideration.

In Loewer Realty Company v. Anderson, Collector (C. C. A.) 31 F.(2d) 268, 270, the same point was raised. The court there said: "It is objected that the waiver was without consideration, but the statute requires nothing but a consent, without mentioning consideration, and the taxpayer should not in any event be allowed to repudiate a consent upon which the Commissioner has relied."

It can be further said that forbearance to act is always a good consideration.

■ Although there was a tax liability, was the collection of the tax barred by the statute of limitations?

The assessment in the instant case was made after the passage of the Revenue Act of 1924, 43 Stat. 253, and before the expiration of the time within which such an assessment was barred, and therefore the assessment was timely made.

Section 278 of the Revenue Act of June 2, 1924, provides:

"Section 278 (c) Where both the Commissioner and the taxpayer have consented in writing to the assessment of the tax after the time prescribed in section 277 for its assessment the tax may be assessed at any time prior to the expiration of the period agreed upon.

"(d) Where the assessment of the tax is made within the period prescribed in section 277 or in this section, such tax may be collected by distraint or by a proceeding in court, begun within six years after the assess-

ment of the tax. Nothing in this Act shall be construed as preventing the beginning, without assessment, of a proceeding in court for the collection of the tax at any time before the expiration of the period within which an assessment may be made.

"(e) This section shall not (1) authorize the assessment of a tax or the collection thereof by distraint or by a proceeding in court if at the time of the enactment of this Act such assessment, distraint, or proceeding was barred by the period of limitation then in existence, or (2) affect any assessment made, or distraint or proceeding in court begun, before the enactment of this act." 43 Stat. 300.

In United States v. Crook et al., 18 F.(2d) 449, 450 (5th C. C. A.), decided April 16, 1927, a similar question arose. The court there said:

"The assessment in question was made within the time prescribed in subdivision (2) of section 277 [26 USCA § 1057 note] as it was made within five years after the return was filed. The provision of that subdivision 'that no proceeding in court for the collection of such taxes shall be begun after the expiration of such period' is not applicable to this case, as that provision is limited or qualified by the initial words of section 277, 'except as provided in section 278,' and subdivision (d) of section 278 explicitly provides that, 'where the assessment of the tax is made within the period prescribed in section 277, * * * such tax may be collected by distraint or by a proceeding in court, begun within six years after the assessment of the tax.'"

In Loewer Realty Company v. Anderson, 31 F.(2d) 268 (2d C. C. A.), decided March 4, 1929, that court had a similar question before it and held that the tax could be collected. At page 269 the court said:

"It is contended by the plaintiff that section 278 (d), 26 USCA § 1061, of the act of 1926 precluded the collection of any tax that had not been assessed within five years after the filing of the return and this because of the words 'within the statutory period of limitation properly applicable thereto.' But such an interpretation gives no effect whatever to section 278 (c), providing in substance that, where a waiver is signed, 'the tax may be assessed at any time prior to the expiration of the period agreed upon.' It also involves a complete change in legislative policy over the act of 1924, although the language of section 278 (c) in the two acts providing for a consent in writing to the assessment of the tax after the time prescribed in section 277 is identical.

"Statutes of limitation barring the collec-

tion of taxes must receive a strict construction in favor of the government. Limitation will not be presumed, in the absence of clear congressional action. E. I. Dupont de Nemours & Co. v. Davis, 264 U. S. at page 462, 44 S. Ct. 364, 68 L. Ed. 788; Bowers v. N. Y. & Albany Lighterage Co., 273 U. S. at page 349, 47 S. Ct. 389, 71 L. Ed. 676. But it is not necessary to invoke such a rule here. The plain purpose of section 278 of the act of 1926, as that of section 278 of the act of 1924 and section 250 (d) of the act of 1921 (42 Stat. 265), was to give the Commissioner additional time to assess taxes if he could obtain the consent of the taxpayer. Plaintiff's interpretation of the act of 1926 would render the consent valueless. But it is perfectly consonant with the language of section 278 (c) to say that the words 'statutory period of limitation applicable thereto' were intended to include both the five years allowed to make the assessment where no extension had been agreed to, and the five years, plus the extended period, in case a waiver had been signed. Each period is 'statutory,' for the statute provides for them both. In our opinion a fair reading of the act of 1926 shows that the Commissioner was within his rights in making the assessment within the extended period, and that the collector was authorized to require payment of the taxes within six years after such an assessment. Florsheim Bros. Dry Goods Co. v. United States (C. C. A.) 29 F.(2d) 895. See, also, United States v. Crook (C. C. A.) 18 F.(2d) 449."

Adopting the reasoning in those two cases we hold that the tax could be collected.

■■ That leaves the question: Was the sale as evidenced by the letter income during the year 1916 or 1917?

On sales of property, gain alone represents income.

The agreement between Henry L. Doherty & Co. and the appellant, dated November 10, 1916, was merely a bare option. Henry L. Doherty & Co. were not liable for the purchase price and could not have successfully demanded a transfer of the stock of the Peerless Refining Company until after the exercise of the option in 1917. Until the option was exercised, there was no certainty that it ever would be exercised, and therefore no certainty of gain until the option was actually exercised, which was during the year 1917.

The $50,000 paid during the year 1916, although a part of $1,250,000 that was finally paid, was not income merely because it was a payment, for the reason that, until the entire amount had been paid, the gain could not be computed. Bedell v. Commissioner of Internal Revenue (C. C. A.) 30 F.(2d) 622.

The Commissioner therefore rightfully taxed as income in the year 1917 the gain derived from the sale of the appellant's stock to Henry L. Doherty & Co.

The judgment should be affirmed.