UNITED THACKER COAL CO. v. COMMIS-SIONER OF INTERNAL REVENUE.

No. 2436.

Circuit Court of Appeals, First Circuit.

Jan. 2, 1931.

232·

The petitioner's fiscal year began July 1, 1917, and ended June 30, 1918, and its return of taxes for this period, due not later than August 30, 1918, was filed July 18, 1918. Under section 14(a) of the Revenue Act of 1916 (39 Stat. 772), as amended by the Revenue Act of 1917 (40 Stat. 300), the Commissioner, upon discovery within three years after the petitioner's return was due that such return was incorrect, was authorized to make a corrected return and assess a deficiency tax. The Commissioner, however, failed to discover that the petitioner's return was incorrect until May 15, 1924.

The first question is whether on the facts of this case the authority of the Commissioner to assess a deficiency tax was barred by his failure to discover and notify the petitioner of an error in its return within three years of August 30, 1918. The contention of the petitioner is that after the expiration of three years, that is, after August 30, 1921, the Commissioner was without authority to assess a deficiency tax against it. This may. be so as regards the power conferred upon him by section 14(a) of the Revenue Act of 1916, as amended by the Revenue Act of 1917. But in the act of 1921, approved November 23, 1921 (42 Stat. 227, 265), it was provided in section 250(d):

"The amount of income, excess-profits, or war-profits taxes due under any return made * * * under prior income, excess-profits, or war-profits tax Acts * * * shall be determined and assessed within five years after the return was filed, unless both the Commissioner and the taxpayer consent in writing to a later determination, assessment, and collection of the tax; and no suit or proceeding for the collection of any such taxes due under this Act or under prior income, excess-profits, or war-profits tax Acts * * * shall be begun, after the expiration of five years after the date when such return was filed. * * *"

By this act power was conferred upon the Commissioner to assess a. deficiency excess profits tax within five years after the return was filed July 18, 1918, which means before July 18, 1923. Section 250(d), therefore, controls and fixes the period within which the Commissioner was authorized to assess and collect taxes levied under prior acts. This was the conclusion reached by the Court of Appeals of the Fourth Circuit in the companion case of Trustees for the Ohio & Big Sandy Coal Company v. Commissioner, 43 F.(2d) 782. See also W. P. Brown & Sons Lumber Co. v. Commissioner (6th

Lyle T. Alverson, of New York City (Wayne Johnson, of New York City, and Buford Tynes, of Huntington, W. Va., on the brief), for petitioner for review.

P. S. Crewe, Sp. Atty., Bureau of Internal Revenue, of Washington, D. C. (G. A. Youngquist, Asst. Atty. Gen., C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, of Washington, D. C., and J. Louis Monarch and Andrew D. Sharpe, Sp. Assts. to Atty. Gen., on the brief), for Commissioner of Internal Revenue.

Before BINGHAM, ANDERSON, and WILSON, Circuit Judges.

BINGHAM, Circuit Judge.

This is the petition of the United Thacker Coal Company to review an assessment against it of a deficiency excess profits tax amounting to $30,095.44 for the period April 30, 1917, to December 20, 1917.

Circuit) 38 F.(2d) 425; Aiken v. Commissioner (8th Circuit) 35 F.(2d) 620; Greylock Mills v. Commissioner (2d Circuit) 31 F.(2d) 655.

■ Section 250(d), though retroactive, is not unconstitutional, for the petitioner had no vested right not to have a deficiency assessed against it. Regla Coal Co. v. Bowers (D. C.) 37 F.(2d) 373; Eastman v. McCarten, 70 N. H. 23, 45 A. 1081, and cases there cited.

Section 1106(a) of the Revenue Act of 1926, approved February 26, 1926 (26 USCA § 1249 note), has no bearing upon the question here presented, for the tax in question was assessed September 25, 1925, five months before the provisions of section 1106 went into effect.

■ The deficiency tax in question was not assessed within the five-year period limited by section 250(d) of the act of 1921; but before the expiration of that period the taxpayer filed waivers or consents in writing with the Commissioner for a later determination, assessment and collection of the tax. If they were valid waivers under section 250 (d) then, inasmuch as the period was thereby extended beyond the time when the tax was assessed, the assessment was seasonably made.

The petitioner questions the validity of the waivers. It appears that on January 16, 1923, and before the expiration of the five-year period fixed by section 250(d), the petitioner executed and delivered to the Commissioner its written consent extending the time for the determination, assessment, and collection of the deficiency tax to April 1, 1924; that this written consent or waiver had written upon it, "Approved, D. H. Blair, A. H. F., Commissioner of Internal Revenue, date Jan. 19, 1923"; that January 8, 1924, and before the expiration of the time fixed by the waiver of January 16, 1923, the petitioner executed and delivered to the Commissioner another written consent or waiver, extending the time to March 15, 1925; that this waiver had upon it, "D. H. Blair, Commissioner, S. A., Jan. 10, 1924"; that November 24, 1924, and before the expiration of the time fixed by the prior waiver, the petitioner executed and delivered to the Commissioner another written consent or waiver extending the time for a further period of one year, or to March 15, 1926; that this waiver also had upon it, "D. H. Blair, Commissioner, L. T. L."; and that the signature "D. H. Blair" appearing on each of these waivers was "not the personal hand writing of D. H. Blair, Commissioner of Internal Revenue."

It further appears that each of these written consents or waivers, made in the manner above set forth, were acted upon by the Commissioner not only in allowing renewal waivers to be filed from time to time as above stated, but in letters and correspondence between the Commissioner and the petitioner leading up to the determination and assessment of the tax.

■ The petitioner contends that, under section 250(d), the Commissioner's consent in writing to each of the waivers was essential; and that his consent involved the exercise of discretion, which could not be delegated to a subordinate. If this be conceded, it does not follow that the mere manual act of placing the signature of the Commissioner upon a waiver must be done by him personally; and the fact that the signature is not in his handwriting does not show that he did not exercise the discretion involved in the approval of the waiver. If there had been direct evidence that the signature of the Commissioner on each waiver was written at his direction, there could be no question but that the signature was properly made and in the exercise of the Commissioner's discretion. The Commissioner is presumed to discharge his official duties in a proper and legal manner; and, in this case, if it was essential that the Commissioner should have directed the placing of the signature upon each waiver, this is presumed to have been done in the absence of evidence to the contrary, for public officials are presumed to act correctly and in accordance with the law. This is, in substance, the view expressed by the court in the Fourth Circuit in Trustees for the Ohio & Big Sandy Coal Company v. Commissioner, supra, and cases there cited. Some of these cases may have expressed a broader view, but we are content with the more limited one here stated.

■ The third question raised by the petitioner in its assignment of errors is whether the Ohio & Big Sandy Coal Company and the petitioner were affiliated during the period from April 30, 1917, to December 20, 1917. The Ohio & Big Sandy Coal Company and the Federal Gas, Oil & Coal Company each maintained their accounts and made their returns on a separate basis; and each for its fiscal year beginning May 1, 1917, and ending April 30, 1918, made a separate return. The petitioner, the Thacker Company, maintained its accounts and made its returns on the basis of a fiscal year ending June 30,

and made and filed a separate return for the fiscal year beginning July 1, 1917, and ending June 30, 1918.

The Ohio & Big Sandy Coal Company owned all the stock of the Thacker Company and a substantial majority of the stock of the Federal Gas, Oil & Coal Company and of the Logan C. H. & M. Railway Company. It owned no property, real or personal, of a tangible nature. There was an indebtedness due it from the Thacker Company in the sum of $641,500, and the Logan C. H. & M. Railway Company apparently owed it $987.50, for the consolidated balance sheet prepared by the Commissioner shows that sums representing intercompany debts or bills receivable were due to the Ohio & Big Sandy Coal Company to the amount of $642,487.50, of which $641,500 was owing by the Thacker Company.

It further appears that since 1904, and during 1917, the business of the United Thacker Coal Company was the ownership of coal and timber lands which it was engaged in prospecting and rounding out; that the Ohio & Big Sandy Coal Company held the stock of the United Thacker Coal Company and the other two subsidiaries (the Federal Gas Company and the Logan Ry. Company); that the Big Sandy distributed to its stockholders on December 20, 1917, all of the stock of the Thacker Coal Company and of the Federal Gas, Oil & Coal Company (probably, also, of the Logan Railway Company) and immediately thereafter, on December 29, 1917, was dissolved. The Board of Tax Appeals in its opinion states: "The Commissioner held that the two corporations [the Big Sandy and the Thacker] were affiliated from April 30, 1917, to December 20, 1917, the latter date being the date when the Ohio & Big Sandy, which held all of the stock of the United Thacker, distributed all of its stock to its stockholders, thus ending the affiliation between the companies." The United Thacker Company, however, continued in existence after the close of its fiscal year ending June 30, 1918.

It is apparent, from these findings of fact and the statement in the opinion of the Board of Tax Appeals as to the Commissioner's action thereon, that the Commissioner found that the Thacker Company and the Big Sandy Company were affiliated for the reason that the Big Sandy Company owned and held all the stock of the Thacker Company. This idea of the Commissioner is further borne out in his answer to the petition where he states: "The basis of computation of invested capital of the corporations affiliated within the meaning of Title II of the Revenue Act of 1917 and section 1331 of the Revenue Act of 1921, where such affiliation results from the ownership by one corporation of all or substantially all the capital stock of the other corporation, etc."

As the period during which affiliation existed, if it existed at all, was during a part of the calendar year 1917, the question of affiliation for the purpose of a consolidated tax return is to be determined under the provisions of the Revenue Act of 1917, amended by the Revenue Act of 1921. In the Revenue Act of 1921 (42 Stat. 319 [26 USCA § 1067]) it is provided:

"1331(a) That Title II [Excess profits tax Title] of the Revenue Act of 1917 shall be construed to impose the taxes therein mentioned upon the basis of consolidated returns of net income and invested capital in the case of domestic corporations * * * that were affiliated during the calendar year 1917.

"(b) For the purpose of this section a corporation * * * was affiliated with one or more corporations * * * (1) when such corporation * * * owned directly or controlled through closely affiliated interests or by a nominee or nominees all or substantially all the stock of the other or others, or (2) when substantially all the stock of two or more corporations * * * was owned by the same interests: Provided, That such corporations * * * were engaged in the same or a closely related business, or one corporation * * * bought from or sold to another corporation * * * products or services at prices above or below the current market, thus effecting an artificial distribution of profits, or one corporation * * * in any way so arranged its financial relationships with another corporation * * * as to assign to it a disproportionate share of net income or invested capital. * * *

"(c) The provisions of this section are declaratory of the provisions of Title II of the Revenue Act of 1917."

The proviso contained in section 1331(b) is omitted from the corresponding section (section 240(b) of the Revenue Act of 1918 (40 Stat. 1082), which may account for the Commissioner's overlooking the limitations contained in the proviso of section 1331(b). The petitioner, however, insists on the limitations there prescribed and contends that, on the facts above recounted, most of which appear in the consolidated balance sheet prepared by the Commissioner, the limitations of the proviso for affiliation were not ful-

filled, and that the mere fact that the Big Sandy Company owned all the stock of the Thacker Company was not sufficient, under the act of 1921, to base a finding of affiliation for a consolidated tax return. The Thacker Company's business was the ownership of coal and timber lands which it was engaged in prospecting and rounding out. The Big Sandy Company owned no coal or timber land or any land, so that it could not have been engaged in the same or a closely related business to that of the Thacker Company, the Oil Company, or the Logan Railway Company, and the most that appears is that the Thacker Company owed the Big Sandy Company a large sum of money loaned by the latter to the former. It disposed of none of its stock to its subsidiaries, but continued to hold the same until its dissolution. And such being the case, we are of the opinion that neither the Commissioner nor the Board of Tax Appeals was warranted in finding that the Big Sandy Coal Company and the United Thacker Coal Company were affiliated for the purpose of a consolidated tax under the Revenue Act of 1917 as amended in 1921.

In this situation we find it unnecessary to consider the other questions raised by the petitioner.

The order or decision of the Board of Tax Appeals is vacated, and the case is remanded for further proceedings not inconsistent with this opinion.