**Neang Chea TAING,**
**Petitioner/Plaintiff,**

v.

Michael **CHERTOFF**, Secretary, Department of Homeland Security; Emilio Gonzalez, Director, U.S. Citizenship and Immigration Service; Dennis Riordan, District Director of Boston MA, U.S. Citizenship and Immigration Service. Respondents/Defendants.

Civil Action No. 07–10499–WGY.

United States District Court,
D. Massachusetts.

Dec. 12, 2007.

Thomas Stylianos, Jr., Lowell, MA, for Petitioner/Plaintiff.

Mark T. Quinlivan, United States Attorney's Office, Boston, MA, for Respondents/Defendants.

## MEMORANDUM AND ORDER

YOUNG, District Judge.

This case presents a question of first impression in the First Circuit, viz does a properly filed "immediate relative" visa petition lapse upon the death of the immediate relative during the processing period? This case arises out of the denial by the United States Citizenship and Immigration Service ("government") of an "immediate relative" visa petition upon an application for adjustment of status where the petitioner's husband died while the application was pending.

The Plaintiff/Petitioner Neang Chea Taing ("Mrs.Taing"), a citizen of Cambodia, is the surviving spouse of naturalized United States citizen Techumsen Chip Taing ("Mr.Taing"). Soon after their wedding, Mr. Taing filed an immigrant visa petition (the "Petition") on behalf of his wife[1] and Mrs. Taing filed an adjustment of status application (the "Application") (the Petition and the Application will collectively be referred to as the "Applications"). She also filed a request for work authorization which was immediately granted. Before the government had processed the Applications, Mr. Taing died. As a result, the government denied Mrs. Taing's Applications on the ground that, after Mr. Taing's death, Mrs. Taing was no longer eligible for an immigrant visa or a status adjustment because she was no longer a spouse of a U.S. citizen and, therefore, no longer an "immediate relative" pursuant to the terms of I.N.A. section 201(b)(2)(A)(I).

Mrs. Taing brings this action seeking declaratory and injunctive relief and mandamus to compel the government a) to rule, as matter of statutory construction, that Mrs. Taing remains an "immediate relative" spouse under the I.N.A. section 201(b)(2)(A)I; b) reopen and resolve her immigrant visa petition; and c) reopen and resolve her application for adjustment of status.

The issue is whether the government correctly interprets section 201(b)(2)(A)(I) of the I.N.A. and whether, based on this interpretation, correctly denied Mrs. Taing's Applications.

---

1. Under the Immigration and Naturalization Act of 1952 ("I.N.A") section 204 the immigrant visa petition should be filed by the U.S. citizen on behalf of the spouse. It provides that "[a]ny citizen of the United States claiming that an alien is entitled to classification by reason of relationship ... or to an immediate relative status ... may file a petition with the Attorney General for such classification." I.N.A. § 204.

## I. BACKGROUND

### A. Procedural Posture

Mrs. Taing filed a Petition for Writ of Mandamus and Complaint for Declaratory and Injunctive Relief ("Compl.") [Doc. No. 1], on March 14, 2007, against Alberto Gonzales, United States Attorney General;[2] Michael Chertoff, Secretary of the Department of Homeland Security; Emilio Gonzalez, Director of the U.S. Citizenship and Immigration Service; and Dennis Riordan, District Director of the Boston Massachusetts District Office of the U.S. Citizenship and Immigration Service, the office which has jurisdiction over (and denied) Mrs. Taing's Applications (collectively the "government"). The complaint contains three counts which are not very clearly presented. This Court reconstructs them as follows: (1) unlawful deprivation of the opportunity to obtain adjustment to the status of a Lawful Permanent Resident, I.N.A. section 245, *id.* ¶¶ 29–30; (2) injunctive relief to "compel agency action unlawfully withheld or unreasonably delayed" and to hold unlawful agency action that is not in accordance with law[3] which in turn is said to have caused Mrs. Taing a "legal wrong" under 5 U.S.C section 702, as she has no other adequate remedy in a court, *id.* ¶¶ 31–33; (3) the government's failure to perform duties owed to Mrs. Taing under the I.N.A. and 28 U.S.C. section 1361 with the result that she was stripped of her status as an Immediate Relative Spouse upon an allegedly erroneous statutory construction and not for any discretionary reason. *Id.* ¶¶ 34–37.

On August 2, 2007 the government filed a Motion to Dismiss, Defs. Mot. to Dismiss ("Defs. Mot. to Dismiss") [Doc. No. 11], and a Memorandum in Support of the Motion to Dismiss, Defs. Mem. in Supp. of Mot. to Dismiss [Doc. No. 12] ("Defs.Mem."). On August 27, 2007 Mrs. Taing filed a Memorandum in Opposition to the Motion to Dismiss, Pl. Opp'n Mem. to Defs. Mot. to Dismiss [Doc. No. 14] ("Pl. Opp'n Mem.").

### B. Facts Alleged

On June 17, 2004 Mrs. Taing entered the United States as a tourist. Compl ¶¶ 9, 21. During her visit, she fell in love with Mr. Taing, a naturalized United States citizen of Cambodian heritage, and married him on October 4, 2004. *Id.* ¶ 9. In December 2004, Mr. Taing filed a petition for his wife to obtain an immigrant visa as an immediate relative (an I–130 petition) under the I.N.A. section 204(a). *Id.* ¶¶ 10, 23. He paid all the necessary filing fees. *Id.* ¶ 23. Mrs. Taing filed, on her own behalf, an application for adjustment of status (an I–485 application) under the I.N.A. section 245(a). *Id.* ¶¶ 10, 22. She paid all the necessary filing fees. *Id.* ¶ 22. She also applied for a work authorization which was immediately granted. *Id.* ¶¶ 10, 11. On July 2, 2005, Mr. Taing died. *Id.* ¶ 12. On September 13, 2005, the government issued a notice to Mrs. Taing and her now deceased husband to appear for an interview regarding their Applications. The government had scheduled that interview for October 13, 2005.[4]

---

2. Alberto Gonzales has since resigned the office of the United States Attorney General. As he is here sued only on his official capacity, it is appropriate that the complaint against him be dismissed sua sponte.

3. In this case the denial of Applications based solely upon the interpretation of the term

"immediate relative" under I.N.A. section 201(b)(2)(A)(I).

4. It seems logical and it even is expected that the USCIS will take some time to process and evaluate the Applications because of the volume of Applications it has to manage. Wholly apart from the statutory analysis below, however, it does not seem fair to punish the

*Id.* ¶ 14. Mrs. Taing appeared for the interview alone. *Id.* On October 26, 2005, the Applications were denied. On April 10, 2006, the Department of Homeland Security mailed Mrs. Taing a Notice to Appear charging her with being a visa overstay. *Id.* ¶ 16.

Mrs. Taing's prior counsel filed a petition to have her considered a widow of a citizen who had been married for two years at the time of the citizen's death but as Mrs. Taing had manifestly not been married for two years at the time of Mr. Taing's death, this petition was denied. *Id.* ¶ 18.

Both parties agree that the facts alleged above are accurate. They disagree, however, as to the proper interpretation of section 201(b)(2)(A)(I) of the I.N.A. and whether Mrs. Taing remains an "immediate relative" of a citizen of the United States after her husband's death.

### C. Federal Jurisdiction

This Court has jurisdiction over this case pursuant to 8 U.S.C § 1331; the Administrative Procedure Act, 5 U.S.C. § 701 et seq.; the Mandamus Act, 28 U.S.C. § 1361; and the Declaratory Judgments Act, 28 U.S.C. § 2201.

Venue is appropriate pursuant 28 U.S.C section 1391(e) as Mrs. Taing resides in Lowell, Massachusetts; a substantial part of the events giving rise to the claim occurred in Eastern Massachusetts, and the office that denied the Application was the Boston Region/District Office of the United States Citizenship and Immigration Services (an agency of the United States Department of Homeland Security).

Mrs. Taing has no available administrative remedies. The Board of Immigration and Naturalization appeals determined in *Matter of Sano* 19 I. & N. Dec. 299 (1985) that it does not have jurisdiction to rule on the immigrant petition (I–130) brought by a beneficiary (Mrs. Taing) and not by a petitioner (Mr. Taing). There is no administrative appeal for the denial of a petitioner's Application to Adjust Status (I–485). Mrs. Taing recognizes that although she could renew her application in removal proceedings before the Executive Office of Immigration Review ("EOIR") such action would be futile without an immigrant visa as the EOIR lacks jurisdiction over visa petitions.

■ "Pure question of law [such as the proper definition of 'spouse' under section 1151] raised in a petition to review a decision of the [Board of Immigration Appeals] are reviewed de novo." *de Martinez v. Ashcroft,* 374 F.3d 759, 761 (9th. Cir. 2004). The First Circuit held in *North American Industries, Inc. v. Feldman,* 722 F.2d 893 (1st. Cir.1983) that "federal courts may engage in a plenary review of questions of law, including questions of statutory construction and interpretation." *Id.* at 898 (citing *Tovar v. INS,* 612 F.2d 794, 797 (3rd Cir.1980); *de los Santos v. INS,* 525 F.Supp. 655, 660 (S.D.N.Y.1981)).

[T]he decision to grant or deny a petition to obtain a preferential immigration classification is one that is within the discretion of INS, and thus, a federal court may reverse an INS denial of a preference classification only if the INS abused its discretion. The INS abuses its discretion if it bases its decision upon an improper understanding of the law or if there is no evidence to support the decision .... while it is true that an appellate court must give great deference to the construction accorded a stat-

___

applicants for the passage of time that was due to the USCIS' high volume of work. If the USCIS had scheduled the interview for June 30 (two days before her husband's death) and not for October 13, Mrs. Taing would most likely have had her immigrant visa granted and her status adjusted.

ute by the agency charged with its administration, deference to an agency's interpretation of the law does not equate with blind faith. A court is obliged to accept the administrative construction of a statute only so far as it is reasonable, and consistent with the intent of Congress in adopting the statute. Thus, if the Agency's interpretation of the statute is found to be inconsistent with the statutory language, legislative history, or purpose of the statute, it must be invalidated. Moreover, an administrative decision based on erroneous legal standards cannot stand.

*North American Industries,* 722 F.2d at 898, 899. (citations omitted).

The First Circuit has also held that "the judiciary is the final authority on issues of statutory construction and must reject administrative construction which are contrary to clear congressional intent." *Succar v. Ashcroft,* 394 F.3d 8, 22 (1st Cir. 2005).

Along this same line, the Ninth Circuit held in *Freeman v. Gonzales,* 444 F.3d 1031 (9th Cir.2006), a case with practically the same facts as those present here, that it had "jurisdiction to review [Taing's] purely legal claim that the district director violated her due process rights by improperly interpreting [I.N.A. section 201(b)(2)(A)(I)] to determine that she was no longer the 'spouse' of a U.S. citizen and therefore not entitled to adjustment of status." *Id.* at 1037.

## D. Statutory Scheme

An alien who is married to a United States citizen may acquire permanent residency so long as the marriage is not a "sham". In order to obtain such permanent residency, the alien must file an Adjustment of Status Application (I–485) pursuant to I.N.A. section 245(a).

Section 245(a) of the I.N.A. ("Section 245") provides:

The status of an alien who was inspected and admitted or paroled into the United States or the status of any other alien having an approved petition for classification as a VAWA self-petitioner may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an *immigrant visa is immediately available* to him at the time his application is filed.

I.N.A. § 245(a) (2006) (emphasis added)

█ The government thus may adjust the alien's status to that of an alien lawfully admitted for permanent residency if the alien is eligible to receive an immigrant visa and an immigrant visa is immediately available to her at the time her application is filed. The alien therefore *needs* an immigrant visa in order to be eligible for adjustment of status.

I.N.A. section 204 ("Section 204") establishes the procedure for granting immigrant status. It provides in relevant part:

[A]ny citizen of the United States claiming that an alien is entitled to classification by reason of a relationship described in paragraph (1), (3), or (4) of section 1153(a) of this title or to an *immediate relative status under section 1151(b)(2)(A)(I) [I.N.A. 201(b)(2)(A)(I) ]* of this title may file a petition with the Attorney General for such classification.

I.N.A. § 204 (2006) (emphasis added).

One way to obtain an immigrant visa is for a citizen of the United States to claim that the alien is entitled to immediate relative status under I.N.A. section 201(b)(2)(A)(I). Immediate relatives are not subject to direct numerical limitations

when acquiring the permanent residency in United States.

I.N.A. section 201(b)(2)(A)(i) ("Section 201(b)(2)(A)(i)") provides:

> Immediate relatives.—For purposes of this subsection, the term "immediate relatives" means the children, spouses, and parents of a citizen of the United States, except that, in the case of parents, such citizens shall be at least 21 years of age. In the case of an alien who was the spouse of a citizen of the United States for at least 2 years at the time of the citizen's death and was not legally separated from the citizen at the time of the citizen's death, the alien (and each child of the alien) shall be considered, for purposes of this subsection, to remain an immediate relative after the date of the citizen's death but only if the spouse files a petition under section 1154(a)(1)(A)(ii) of this title within 2 years after such date and only until the date the spouse remarries. For purposes of this clause, an alien who has filed a petition under clause (iii) or (iv) of section 1154(a)(1)(A) of this title remains an immediate relative in the event that the United States citizen spouse or parent loses United States Citizenship on account of the abuse.

I.N.A. § 201(b)(2)(A)(i) (2006)

"Each year, U.S. citizens may petition for an unlimited number of immediate relatives, defined as parents if the citizen is over 21, spouses and unmarried children under the age of 21." Victoria Lewis, *Immigration Issues, in* Family Law Advocacy for Low and Moderate Income Litigants 321, 325 (Massachusetts Continuing Legal Education, Inc., 1999).

Although Congress has defined the phrase "immediate relative" in Section 201(b)(2)(A)(i) the fact that an "immediate relative" is not subject to the immigrant numerical limitations, makes this important status highly appealing and thus frequently controverted. This status has an important consequence to the interests of both immigrants and the government. Aliens give the phrase a broader interpretation; the government a narrower one.

## II. DISCUSSION

■ Mrs. Taing does not question the government's discretion to deny her visa petition and her application for adjustment of status. She alleges rather that the denial of the Application was unlawful in that the government relied, not on its discretion, but solely on an allegedly unlawful and erroneous interpretation of "immediate relative" as found in Section 201(b)(2)(A)(i). The present motion, therefore, turns on the question of statutory construction.

> When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

*Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). *See Freeman,* 444 F.3d. at 1038.

■ Since the statutory interpretation advanced by the government is that adopted by its agency, USCIS, it is appropriate to consider whether that interpretation is entitled to Chevron deference. The government argues that, even if the Court considers the language of the statute am-

biguous, it should defer to the agency's construction of the statute as established in *Matter of Varela* 13 I. & N. Dec. 453 (1970).

*Matter of Varela* is a 1970 Board of Immigration Appeals (the "BIA") decision upon the visa petition of an alien spouse of a U.S. citizen for immediate relative status. The BIA held that where the citizen spouse had died, while on active duty in the United States Armed Forces a few months after the wedding, "at the time of [the District Director's] decision the beneficiary was not the spouse of a United States citizen. His death had stripped her of that status." *Matter of Varela*, 13 I. & N. Dec. at 454.

*Matter of Varela* was later modified by another BIA decision, *Matter of Sano* 19 I. & N. Dec. 299 (1985). In *Matter of Sano*, the BIA held that it had "no [appellate] jurisdiction over a particular matter unless it has been affirmatively granted by the regulations" and given that "the Board's authority to review decisions on visa-petitions is limited to that accorded by Part 204 of the Regulations, which provides only for an appeal by the petitioner .... the Board lacks jurisdiction to address an appeal by the beneficiary from the denial of the visa petition" and held that "to the extent that [the BIA's] decision in *Matter of Varela*, conflicts with this conclusion, its is hereby modified." *Matter of Sano*, 19 I. & N. Dec. 299, 301 (1985). The BIA held that it found that review of *Matter of Varela* was "inappropriate" in the sense that it lacked jurisdiction to decide on the case. *Id.* at 301. Mrs. Taing suggests that this "inappropriateness" refers to the merits of the case, Pl. Opp'n Mem. at 17. This is incorrect; the reference is to the jurisdictional question.

In *Freeman*, the Ninth Circuit cautions "against granting significant deference to the BIA's conclusion in *[Matter of] Varela*" since the BIA itself had held that decision beyond its jurisdiction in *Matter of Sano*. *Freeman*, 444 F.3d at 1038, n. 10. This Court agrees. The court owes no deference to *Matter of Varela* beyond its persuasive power. The Court in *Freeman* concluded that "the BIA's interpretation, to the extent it is entitled to some deference, is not a permissible construction of the statute" as "Congress clearly intended an alien widow whose citizen spouse has filed the necessary forms *to be* and *to remain* an immediate relative for purposes of [I.N.A. section 201(b)(2)(A)(I)], even if the citizen spouse dies within two years of the marriage." *Id.* at 1038–39.

■ This Court thus addresses the proper construction of Section 201(b)(2)(A)(I) directly. The parties disagree, both as to whether after Mr. Taing's death Mrs. Taing is still a "spouse" as that term is used in the first sentence of the statute, and also as to the interpretation and scope of the second sentence of the statute. Mrs. Taing argues that the status of "immediate relative" is acquired at the time of the filing and cannot be divested automatically because of the death of the spouse, as she remains the surviving spouse of her deceased husband. The government argues that under the second sentence of Section 201(b)(2)(A)(I) a widow can be considered an immediate relative only if she was married to a U.S. citizen for two years before his death.

The government concedes that Mrs. Taing qualified as an immediate relative at the time her husband filed an I–130 immigrant petition on her behalf because she was then a "spouse" of a living U.S. citizen as required by the first sentence of Section 201(b)(2)(A)(I). When her husband died, however, the government argues she lost her status as spouse, because a "spouse" is defined, according to the Black's Law Dictionary, as "one's husband or wife" and "wife" is defined as "a woman who has a

lawful husband *living*" (emphasis added in Defs. Mot. To Dismiss). Upon her husband's death she became a "widow," defined as a "woman whose husband has died and who has not been remarried." Black's Law Dictionary (6th. ed.1990). To reinforce this terminological argument the government cites 1 U.S.C. section 7 which provides that,

> In determining the meaning of any Act of Congress, or of any ruling, regulation, or interpretation of the various administrative bureaus and agencies of the United States, the word 'marriage' means only a legal union between one man and one woman as husband and wife, and the word 'spouse' refers only to a person of the opposite sex who is a husband or a wife.

1 U.S.C. § 7 (2006) (emphasis added).

The government argues that one can be a "spouse" only while both spouses are alive. This argument fails. True, the term "spouse" as defined in the eighth edition of Black's Law Dictionary is, as the government has stated, "one's husband or wife." The government, however, omits the last part of the definition, which states that a "surviving spouse is a spouse who outlives the other." As Mrs. Taing clarifies in her Opposition to Motion to Dismiss, even if one were to turn to the 1991 sixth edition of Black's Law Dictionary, available at the time of the passage of the 1990 I.N.A. amendments, a surviving spouse is defined within the definition of spouse as "one of a married couple who outlives the other." Black's Law Dictionary (6th. ed.1990). Therefore, a surviving spouse still remains a spouse and Mrs. Taing's status as

"spouse" is not obliterated by her husband's death.

The government's argument under 1 U.S.C. section 7 also fails. Section 7 emphasizes that spouses shall be of the opposite sex, it does not mandate that spouses lose their status as such with the death of either one of them. The government seeks to force an interpretation in its favor by emphasizing the use of the present tense in "is a husband or wife." The entire thrust (and legislative history) of 1 U.S.C. section 7 seeks to ensure heterosexual marital unions.[5] Adopting the government's argument here would diminish the beneficent consequences of precisely such a union, thus losing sight of the general purpose of the statute.

The scope of the second sentence of the statute is the most controverted issue for, if the second sentence modifies the first, the government prevails. The government argues that the words "for the purposes of this subsection" confirms its interpretation that the second sentences ought be read as a limitation on the first sentence, and launches off into a long (and largely inapposite) analysis of what a *subsection* is.

Mrs. Taing, however, responds that the second sentence far from limiting the scope of the phrase "immediate relative" actually expands it, giving the opportunity to those surviving spouses who were married for two years to a U.S. citizen who died and who did not file the petition on their behalf before dying, to file the Applications on their own behalf after the death of their spouse but only if they were married for at least two years.

---

**5.** "H.R. 3396, the Defense of Marriage Act, has two primary purposes. The first is to defend the institution of traditional heterosexual marriage. The second is to protect the right of the states to formulate their own public policy regarding the legal recognition of same sex unions. To achieve these purposes, H.R. 3396 has two operative provisions. Section 2 entitled 'Powers reserved to the States' and Section 3 [which] defines the term 'marriage' and 'spouse' for the purposes of federal law only, to reaffirm that they refer exclusively to relationships between persons of the opposite sex.". H.R.REP. No. 104–664, at 2 (1996), U.S.Code Cong. & Admin.News. 1996, p. 2905.

■ It ought be noted that the first sentence of Section 201(b)(2)(A)(I) already contains one limitation. It states that immediate relative status is restricted to parents "whose citizen child is at least 21. There is no comparable qualifier to be a spouse-that is, a requirement that the marriage must have existed for at least two years." *Freeman,* 444 F.3d. at 1039. "Where Congress includes particular language in one section of a statute but omits it in another ..., it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Id.* at 1039 (citing *Keene Corp. v. United States,* 508 U.S. 200, 208, 113 S.Ct. 2035, 124 L.Ed.2d 118 (1993)).

Case law analyzing this controverted second sentence is scarce. There is no First Circuit case on point. As noted above, the Ninth Circuit has held in *Freeman* that "an alien widow whose citizen spouse filed the necessary immediate relative petition form but died within two years of the qualifying marriage nonetheless remains a spouse for the purposes of [I.N.A. 201(b)(2)(A)(I)] and is entitled to be treated as such when [Department of Homeland Security] adjudicates her adjustment of status application." *Freeman,* 444 F.3d at. 1034

Mrs. Freeman, a dual citizen of South Africa and Italy, was awaiting her visa petition and adjustment of status application when her U.S. citizen husband died in a car accident. *Id.* at 1032–33. The couple had been married for less than one year at the moment of the death. *Id.* The USCIS ruled that Mrs. Freeman, pursuant to Section 201(b)(2)(A)(I), could no longer request an adjustment of status because she

was not a "spouse" for purposes of the I.N.A. *Id.* She was ordered to leave the United States because her Visa Waiver Program ("VWP") authorization had expired.[6] *Id.* The facts in *Freeman* are thus virtually identical to those present here. In *Freeman* the Ninth Circuit had to decide two matters, the scope of the Visa Waiver Program no contest-clause (not applicable to Mrs. Taing's case) and the proper definition of spouse for the purpose of adjustment of status. *Id.* at 1033. In this respect, the Ninth Circuit held that:

[a] more logical and statutorily substantiated interpretation of the second sentence is that it applies to those aliens whose citizen spouses did not initiate adjustment of status proceeding before they die, granting such surviving spouse a beneficial right to file an immediate relative petition even without a living citizen spouse to vouch for the fact of the marriage.

*Id.* at 1041.

The Ninth Circuit persuasively explains that "[i]t is relevant that Congress introduced the two-year durational requirement for certain alien widows in a separate sentence of the statute. The 'grammatical structure of th[is] statute' suggests that the second sentence 'stands independent' of the first and does not qualify the general definition of spouse." *Id.* at 1041 n. 14 (citing *United States v. Ron Pair Enterprises,* 489 U.S. 235, 241–42, 109 S.Ct. 1026, 103 L.Ed.2d 290(1989)). Accordingly, the second sentence grants a separate right to an alien widow to self petition under Section 204 as an immediate relative.

**6.** Mrs. Freeman, unlike Mrs. Taing, entered the country under the terms of a special Visa Waiver Program granting her a 90–day visitor's stay. The Visa Waiver program authorizes citizens of certain enumerated countries, including Italy, to enter the U.S. without a visa for a term no longer than 90 days. VWP entrants waive their right to challenge any removal action other than on basis of asylum. They are allowed to seek adjustment of status. This distinction does not make any practical difference as I.N.A. section 245(a) applies to aliens who entered either under the VWP or under a tourist visa. *See* I.N.A. § 245(a).

When the citizen spouses dies *after* he has filed Form I–130 and otherwise satisfied the necessary requirements, the duration of the marriage is of no consequence (unless [the Department of Homeland Security] finds the marriage to be sham or otherwise fraudulent) and the surviving spouse remains a qualified immediate relative. However, when a citizen spouse dies before initiating an adjustment of status proceedings on behalf of his alien spouse, Congress has— in the second sentence of [I.N.A. section 201(b)(2)(A)(I) ]—required a minimum of two years marriage as well as a filing within two years of the husband's death.

*Id.* at 1042 (footnote omitted).

This separate right is recognized in the second paragraph of Section 204 when after stating that the procedure for granting an immigrant status should be commenced by the citizen on behalf of the "immediate relative" alien it provides (as an exception to this rule) that "[a]n alien spouse described in the second sentence of [Section 245(a)] *also may* file a petition with the Attorney General under this subparagraph for classification of the alien ... under such section." I.N.A. § 204 (2006) (emphasis added).

This section confirms that Congress' intent in the second sentence of Section 245(a) was to provide an additional right to those alien spouses whose husbands had died without initiating the immigrant proceeding on their behalf to self petition for it.

The recent case of *Robinson v. Chertoff,* No. 06–5702, 2007 WL 1412284 (D.N.J., May 14, 2007) follows the Ninth Circuit's reasoning. In *Robinson,* the District Court of New Jersey denied the government's motion to dismiss and granted the plaintiff's cross motion for summary judgement overruling a USCIS denial of an immediate relative petition filed on her behalf by her U.S. citizen husband who had died while the petition was pending. The facts in *Robinson* are thus the same as those in the instant case. The District Court of New Jersey ruled that "there are two ways to interpret the statute. Either the time of filing controls or the time of the citizens death controls." *Id.* at *5. The Court further stated that,

[U]nder defendants interpretation [of Section 201(b)(2)(A)(I)], the dispositive question is whether the surviving alien spouse and the deceased citizen spouse have been married for at least two years before the citizen's death.... [T]he dispositive question is whether the citizen spouse is still living at the time the application is filed. If the citizen spouse is alive at the time of filing, then the alien spouse is an immediate relative. If the citizen spouse is not alive at the time of filing only then does the two year marriage requirement apply.

*Id.* at *3. The court in *Robinson* persuasively noted that:

[the interpretation proffered by the government] yields strange results. A prompt adjudication of the I–130 petition (before the citizen dies) will result in approval. A delay in adjudication (until after the citizen dies) will result in a denial. But a severe delay of two years, followed by citizen's death, will also result in an approval. The Court cannot imagine that Congress intended the time of death combined with the pace of adjudication, rather than the petitioner's conscious decision to promptly file an I–130 petition, to be the proper basis for determining whether the alien qualifies as an immediate relative.

*Id.* at *5.

The government cites two cases to argue its position. *Turek v. Dept. of Homeland Security,* 450 F.Supp.2d 736 (E.D.Mich. 2006) and *Burger v. McElroy,* 1999 WL

203353, (S.D.N.Y. April 12, 1999) (No. 97–8775). *Turek* is easily distinguishable. The *Turek* court faced a presumption that the marriage was not entered in good faith as it had been contracted while the alien was in removal proceedings. *Turek*, 450 F.Supp.2d. at 739. See *Robinson* at *4 n. 2.

■ The *Burger* court reasoned that as the government could only approve an I–130 petition if the Attorney General determined that "the facts stated in the petition are true" and as the statute was written in present tense, marital union had to be extant at the moment of the Attorney General determination. *Burger* at *5. Therefore, the government's interpretation was entitled to deference under *Chevron* and upheld. *Id.* The *Robinson* court expressly disagreed with *Burger*, persuasively reasoning that:

> [it] decline[d] to stretch the language of [Section] 254(b) to the point where the agency may disqualify an applicant simply because the passage of time renders obsolete information that was true and accurate at the time the I–130 petition was filed.... The Court finds that the statute differentiates between an alien who waits to file a petition until after the citizen spouse is deceased and one who files an I–130 shortly after marriage. In the first case, the alien spouse could have petitioned for an immediate relative visa when the marriage first occurred but did not. In the second case, however, the alien has done everything she could do to ensure the issuance of an immediate relative visa. She has fully complied with the applicable regulations and has acted swiftly to attain permanent residence in the United States. The fortuity of the citizen spouse's untimely death is too arbitrary and random a circumstance to serve as a basis for denying the petition.

*Robinson* at *4. This Court agrees. At issue is not whether the government has discretion to deny an Application (it does) but whether the interpretation upon which the government bases its decision is appropriate (it is not). This Court agrees with the Ninth Circuit's interpretation of Section 201(b)(2)(A)(I). Mrs. Taing remains an immediate relative and ought therefore have her Applications adjudicated as such. This Court having properly interpreted the statutory provision at issue, it need go no further as the administrative agency is presumed to act in accordance with the court's interpretation. "The[re is a] presumption [that] administrative agencies ... will act properly and according to law." *F.C.C. v. Schreiber*, 381 U.S. 279, 296, 85 S.Ct. 1459, 14 L.Ed.2d 383 (1965). *Also see United Thacker Coal Co. v. Commissioner of Internal Revenue*, 46 F.2d 231, 233 (1st. Cir.1931)(Public officials are presumed to discharge their duties according to law.); *Enos v. Secretary of Environmental Affairs*, 432 Mass. 132, 142, 731 N.E.2d 525 (2000)("Public officials ... will be assumed to carry out their duty once the law under which they must act has been judicially declared."); *Minnie v. City of Chicopee*, 344 Mass. 743, 747, 184 N.E.2d 325 (1962) ("[W]e shall not assume that public officials ..., once informed of their duty in the premises, will not take all necessary action to carry out that duty.").

## III CONCLUSION

Accordingly, the Court DENIES the Defendants' Motion to Dismiss [Doc. No. 11] and remands the case to the U.S. Citizenship and Immigration Service for further proceedings in accordance with this decision.

SO ORDERED.