*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 09a0254a.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

NELLY SUPANGAN LOCKHART,
          *Petitioner-Appellee,*

          *v.*

No. 08-3321

JANET NAPOLITANO, Secretary, Department
of Homeland Security, et al.,
          *Respondents-Appellants.*

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 07-00823—Kathleen McDonald O'Malley, District Judge.

Argued: January 20, 2009

Decided and Filed: July 20, 2009

Before: COLE and GIBBONS, Circuit Judges; BELL, District Judge.[*]

_____

**COUNSEL**

_____

**ARGUED:** Elizabeth J. Stevens, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellants. Brent W. Renison, PARRILLI RENISON, Lake Oswego, Oregon, for Appellee. **ON BRIEF:** Gjon Juncaj, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellants. Barbara A. Firstenberg, Cathy M. Shibley, LAW OFFICE, Shaker Heights, Ohio, Brent W. Renison, PARRILLI RENISON, Lake Oswego, Oregon, for Appellee.

_____

**AMENDED OPINION**

_____

COLE, Circuit Judge. The United States Citizen and Immigration Services ("USCIS") denied Petitioner Nelly Supangan Lockhart's ("Lockhart" or "Mrs.

---

[*]The Honorable Robert Holmes Bell, United States District Judge for the Western District of Michigan, sitting by designation.

1

Lockhart") application for an adjustment of status to that of permanent United States resident on the ground that she was statutorily ineligible for such adjustment because she was no longer an "immediate relative" under the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 et seq., upon the death of her husband. Lockhart filed a lawsuit in the United States District Court for the Northern District of Ohio, seeking injunctive, declaratory, and mandamus relief to compel Respondent Janet Napolitano, Secretary of the Department of Homeland Security ("Secretary" of "DHS"), to find, as a matter of law, that she is an "immediate relative" under INA, § 204(b)(2)(A)(i), 8 U.S.C. § 1151(b)(2)(A)(i), and to reopen and readjudicate her application for adjustment of status. The sole issue before us is a question of law, which requires us to interpret language of the INA to resolve a matter of first impression in this Circuit. The question is whether an alien-spouse, whose citizen-spouse filed the necessary "immediate relative" petition form under 8 U.S.C. §§ 1154, 1255(c)(4), but died within two years of the qualifying marriage, qualifies as a spouse under the "immediate relative" provision of the INA. For the reasons set forth below, we conclude that a "surviving alien-spouse" is a "spouse" within the meaning of the "immediate relative" provision of the INA. Accordingly, we **AFFIRM** the district court's grant of summary judgment for Lockhart.

## I.  BACKGROUND

### A.      Factual Background

The facts are not in dispute. Lockhart is a citizen of the Phillippines who was lawfully admitted to the United States on December 15, 2003. Shortly thereafter, on January 20, 2004, she married Gerald Lockhart ("Mr. Lockhart"), a United States citizen. Following the marriage, on February 1, 2004, Mr. Lockhart filed a Form I-130 (Petition for Alien Relative) petition with the Cleveland, Ohio Field Office of the USCIS attesting Mrs. Lockhart's status as his spouse and requesting her classification as an "immediate relative" under 8 U.S.C. § 1151(b)(2)(A)(i). On the same day, Mrs. Lockhart filed a Form I-485 (Application to Register Permanent Residence or Adjust

Status) under 8 U.S.C. § 1255(a). As described below, "immediate relative" status is a prerequisite to eligibility for adjustment of status under 8 U.S.C. § 1255(a).

Four months later, on June 24, 2004, Lockhart gave birth to a son, Justin Carlyle Lockhart. Mr. Lockhart was listed as Justin's father. During this time, the USCIS began processing the Lockharts' Form I-130 petition and Form I-485 application. In April or May, 2005, the USCIS interviewed the Lockharts. At the interview, both Mr. and Mrs. Lockhart testified as to the validity of their marriage. On April 6, 2005, the USCIS requested additional evidence from Mrs. Lockhart, which she subsequently sent to the Cleveland, Ohio office in April 2005.

On December 21, 2005, Mr. Lockhart died suddenly of a heart attack. At the time of Mr. Lockhart's death, he and Mrs. Lockhart had been married for one year and eleven months, and the USCIS had not adjudicated the Form I-130 petition or the Form I-485 application. On June 27, 2006, more than two years after Mr. Lockhart filed his petition and his wife filed her application, the USCIS requested a copy of Mr. Lockhart's death certificate. Thereafter, on October 26, 2006, the USCIS denied the Form I-130 petition and the Form I-485 application. USCIS denied the Form I-130 petition solely on the ground that, upon the death of her United States citizen husband, Mrs. Lockhart was no longer the "spouse" of a United States citizen and was, therefore, not entitled to treatment as an "immediate relative" under 8 U.S.C. § 1151(b)(2)(A)(i). The USCIS subsequently denied Mrs. Lockhart's Form I-485 application because it was dependent on approval of the Form I-130 petition.

On November 20, 2006, Mrs. Lockhart filed a motion to reopen and reconsider the denial of her deceased husband's Form I-130 petition. On December 4, 2006, the USCIS denied this motion without explanation. Currently, Lockhart is in removal proceedings before the United States Immigration Court in Cleveland, Ohio.

**B.       Procedural Background**

On March 20, 2007, Lockhart filed a petition for a writ of mandamus and a complaint seeking declaratory and injunctive relief.  Lockhart later amended the complaint to request injunctive, declaratory, and mandamus relief to compel the Secretary (1) to find that, as a matter of law, she is an "immediate relative" under INA § 204(b)(2)(A)(i), 8 U.S.C. § 1151(b)(2)(A)(i), and (2) to reopen and readjudicate Mr. Lockhart's Form I-130 petition and her I-485 application for adjustment of status. Thereafter, the Secretary filed a motion to dismiss Mrs. Lockhart's petition for mandamus relief and her complaint.  Lockhart filed a motion for summary judgment.  After considering the motions, the district court concluded that Lockhart is a "spouse" under 8 U.S.C. § 1151(b)(2)(A)(i), denied the Secretary's motion to dismiss, and granted summary judgment in favor of Lockhart.  This timely appeal followed.

## II.  ANALYSIS

**A.       Standard of Review**

This Court reviews the district court's determination of a non-discretionary "purely legal question, such as the proper definition of 'spouse' under 8 U.S.C. § 1151 (b)(2)(A)(i)" de novo. *Freeman v. Gonzales*, 444 F.3d 1031, 1037 (9th Cir. 2006) (citing *De Martinez v. Ashcroft*, 374 F.3d 759, 761 (9th Cir. 2004)); *see also Sanusi v. Gonzales*, 474 F.3d 341, 345 (6th Cir. 2007).

**B.       The INA Statutory Framework**

The INA provides numerical limits on the number of aliens who may be issued immigrant visas or admitted to the United States for permanent residence.  8 U.S.C. § 1151(a). However, the "immediate relatives" of United States citizens are not subject to the direct numerical limitations.  *See* 8 U.S.C. § 1151(b).  In order for an alien to immigrate as an "immediate relative" based on a close family relationship to a citizen or resident, a qualifying family relationship must exist.  8 U.S.C. § 1151.  The alien is not automatically accorded the status of "immediate relative" under this provision; instead, the United States citizen or lawful permanent resident to whom the alien is

related must file a Form I-130 petition on the alien's behalf with the USCIS to establish the existence of the relationship.  8 U.S.C. § 1154(a)(1)(A)(i).  The USCIS shall approve the petition if it determines, after investigating the facts in each case, that the facts stated in the petition are true and the alien is an immediate relative.  8 U.S.C. § 1154(b).

Following the USCIS's approval of the citizen's petition, an immigrant visa is immediately available to the alien, and the alien is eligible for an adjustment of status to that of permanent resident.  8 U.S.C. § 1255(a); 8 C.F.R. § 245.2(a)(2).  Adjustment of status under 8 U.S.C. § 1255 is a two-step process.  First, the alien must prove statutory eligibility for the adjustment, and second, the Attorney General—or, in the context of deportation proceedings, the immigration judge—must exercise his discretion to grant relief.

The question before this Court is whether an alien-spouse whose citizen-spouse filed the necessary "immediate relative" form under 8 U.S.C. §§ 1154, 1255(c)(4), but died within two years of the qualifying marriage, nonetheless remains a "spouse" under 8 U.S.C. § 1151(b)(2)(A)(i) and is entitled to treatment as a "spouse" when  the DHS adjudicates that alien's petition to adjust his/her status to that of a lawful permanent resident.  Two other circuit courts have weighed in on this precise issue, but they reached opposite conclusions. *See Freeman v. Gonzales*, 444 F.3d 1031 (9th Cir. 2006) and *Robinson v. Napolitano*, 554 F.3d 358 (3d Cir. 2009).  In *Freeman*, the Ninth Circuit held that the "language, structure, purpose and application" of § 1151(b)(2)(A)(i) indicate that Congress intended a surviving alien-spouse to remain a "spouse" under the "immediate relative" provision despite the death of the citizen-spouse. *See Freeman*, 444 F.3d at 1039.  In *Robinson*, the Third Circuit reached the opposite conclusion, finding that a surviving alien-spouse is not an immediate relative under 8 U.S.C. § 1151(b)(2)(A)(i). *Robinson*, 554 F.3d at 364.

The Secretary argues that Mrs. Lockhart is no longer the spouse of a United States citizen because, as a matter of law, her marriage ended when Mr. Lockhart died. Put simply, the Secretary argues that because Mrs. Lockhart is no longer legally married, she is likewise no longer Mr. Lockhart's spouse, and, therefore, no longer an "immediate

relative."  We disagree.  As set forth below, we are persuaded by the reasoning of the Ninth Circuit and, therefore, hold that a surviving alien-spouse whose citizen-spouse filed the necessary "immediate relative" form under 8 U.S.C.  §§ 1154, 1255(c)(4), but died within two years of the qualifying marriage remains a "spouse" under 8 U.S.C. § 1151(b)(2)(A)(i).

**C.      The Plain Language of 8 U.S.C. § 1151(b)(2)(A)(i)**

The Supreme Court has established a three-step framework for interpreting statutes: "first, a natural reading of the full text; second, the common-law meaning of the statutory terms; and finally, consideration of the statutory and legislative history for guidance."  *United States ex rel. A+ Homecare, Inc. v. Medshares Mgmt. Group, Inc.*, 400 F.3d 428, 442 (6th Cir. 2005) (citing *United States v. Wells*, 519 U.S. 482, 490-92 (1997)).  In interpreting the "immediate relative" provision, we begin by examining "the language of the statute itself to determine if its meaning is plain.  Plain meaning is examined by looking at the language and design of the statute as a whole."  *United States v. Parrett*, 530 F.3d 422, 429 (6th Cir. 2008) (quoting *United States v. Wagner*, 382 F.3d 598, 607 (6th Cir. 2004)) (internal quotation marks omitted).  However, if "the statutory language is not clear, we may examine the relevant legislative history."  *Id.*  The relevant part of 8 U.S.C. § 1151 defines  an "immediate relative" as:

> the children, spouses, and parents of a citizen of the United States, except that, in the case of parents, such citizens shall be at least 21 years of age. In the case of an alien who was the spouse of a citizen of the United States for at least 2 years at the time of the citizen's death and was not legally separated from the citizen at the time of the citizen's death, the alien (and each child of the alien) shall be considered, for purposes of this subsection, to remain an immediate relative after the date of the citizen's death but only if the spouse files a petition under section 204(a)(1)(A)(ii) [8 U.S.C. § 1154(a)(1)(A)(ii)] within 2 years after such date and only until the date the spouse remarries. For purposes of this clause, an alien who has filed a petition under clause (iii) or (iv) of section 204(a)(1)(A) of this Act [8 U.S.C. § 1154(a)(1)(A)] remains an immediate relative in the event that the United States citizen spouse or parent loses United States citizenship on account of the abuse.

8 U.S.C. § 1151(b)(2)(A)(i).  According to the plain language of the first sentence of 8 U.S.C. § 1151(b)(2)(A)(i), " spouses" are "immediate relatives."  In the first sentence of the "immediate relative" provision, "[o]nly alien parents are subject to any limitation, with the grant of 'immediate relative' status being restricted to those whose citizen child is at least 21 years of age."  *Freeman*, 444 F.3d at 1039; *see also* § 1151(b)(2)(A)(i).  Given that "[t]here is no comparable qualifier to be a "spouse"—that is, a requirement that the marriage must have existed for at least two years"— we must assume that Congress intended no limitation on that term beyond the requirement that both parties are present for the marriage ceremony.  *Freeman*, 444 F.3d at 1039 (quoting *Keene Corp. v. United States*, 508 U.S. 200, 208 (1993) ("[W]here Congress includes particular language in one section of a statute but omits it in another . . . , it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.")).

The question, then, is whether the second sentence of the "immediate relative" provision modifies the first, such that an alien widow or widower is no longer a "spouse" if she or he had not been married for two years at the time of the citizen-spouse's death.  We find that it does not.  The second sentence of the "immediate relative" provision provides:

> In the case of an alien who was the spouse of a citizen of the United States for at least 2 years at the time of the citizen's death and was not legally separated from the citizen at the time of the citizen's death, the alien (and each child of the alien) shall be considered, for purposes of this subsection, to remain an immediate relative after the date of the citizen's death but only if the spouse files a petition under section 204(a)(1)(A)(ii) [8 U.S.C. § 1154(a)(1)(A)(ii)] within 2 years after such date and only until the date the spouse remarries.

8 U.S.C. § 1151(b)(2)(A)(i).  The grammatical structure of the immediate relative provision provides evidence that the first and second sentences of § 1151(b)(2)(A)(i) are two distinct provisions.  Unlike the limitation placed on parents, Congress did not explicitly impose a two-year marriage-duration requirement on the term "spouse" in the first sentence.  As the Ninth Circuit aptly notes,

> [i]t is relevant that Congress introduced the two-year durational requirement for certain alien widows in a separate sentence of the

statute. The grammatical structure of this statute suggests that the second sentence stands independent of the first and does not qualify the general definition of spouse.

*Freeman*, 444 F.3d at 1041 n.14 (citing *United States v. Ron Pair Enter.*, 489 U.S. 235, 241-42 (1989)) (quotation marks omitted). We agree with the *Freeman* court that "the two-year durational language in the second sentence of § 1151(b)(2)(A)(i) grants a separate right to an alien widow to self-petition, within two years of the citizen spouse's death, by filing a [F]orm I-360 where the citizen spouse had not filed an immediate relative petition prior to his death." *Id.* at 1039. Under the regulations implementing the INA, a widow or widower may self-petition for classification as an immediate relative only if (1) "she had been married for at least two years to a United States citizen," (2) "the petition is filed within two years of the death of the citizen spouse," (3) "the alien petitioner and the citizen spouse were not legally separated at the time of the citizen's death," and (4) "the alien spouse has not remarried." 8 C.F.R. §§ 204.2(b)(1)(i)-(iv). From this, the *Freeman* court reasoned that "the more logical and statutorily substantiated interpretation of the second sentence is that it applies to those aliens whose citizen spouses did not initiate an adjustment of status proceeding before they died, granting such surviving spouses a beneficial right to file an 'immediate relative' petition even without a living citizen spouse to vouch for the fact of the marriage." *Freeman*, 444 F.3d at 1041.

According to the *Freeman* court, the framework of "immediate relative" petitions as set forth in 8 U.S.C. § 1154 supports this conclusion. *Id.* at 1041. 8 U.S.C. § 1154(a) describes the types of petitions that may be filed for an alien's classification as an "immediate relative" under § 1151(b)(2)(A)(i) of the INA. Under 8 U.S.C. § 1154(a)(1)(A)(i), "[a] citizen or lawful permanent resident of the United States petitioning under section 204(a)(1)(A)(i) or 204(a)(1)(B)(i) of the Act for a qualifying relative's classification as an immediate relative under section 201(b) of the Act . . . must file a Form I-130 [p]etition [for the] [a]lien [r]elative." While under section 204.1(a)(2) of the INA, an alien-spouse whose citizen-spouse had not filed a petition on his or her behalf prior to the citizen-spouse's death, may file a self-petition under section

204(a)(1)(A)(ii) of the Act for "immediate relative" status but must file a Form I-360 petition. The *Freeman* court explained that "the distinction the regulations draw between the rights of a citizen spouse to petition as compared to those of an alien widow to self-petition is consistent with a congressional intent to create two different processes, such that one or the other applies--either the citizen spouse petitions or, if he dies without doing so, the alien widow may do so." *Freeman*, 444 F.3d at 1041-1042. But, "there is no provision that the citizen spouse's pending petition (and consequently the alien spouse's immediate relative status) is voided on his death, requiring the widow to start over with her own self-petition." *Id*. at 1042.

Like the *Freeman* court, we conclude that the second sentence expands "immediate relative" status to include a surviving alien-spouse whose citizen spouse failed to file an application on his or her behalf prior to the citizen-spouse's death, but that sentence has no effect on the status of a surviving alien-spouse whose citizen spouse filed a petition for immediate relative status prior to his or her death. The two-year marriage-duration language in the second sentence of the immediate relative provision appears to be a procedural requirement for a self-petition in the event that the citizen-spouse dies, rather than a restriction on who is considered a "spouse" when the citizen-spouse petitions on behalf of the alien spouse.

The use of the term "spouse" throughout the "immediate relative" provision also supports our conclusion. The term "spouse" is used in the second sentence of § 1151(b)(2)(A)(i) to refer to a surviving alien-spouse. In the second sentence, an alien spouse whose citizen spouse has died and not filed a Form I-130 petition on the alien spouse's behalf may self-petition "only if the *spouse* files a petition" and "only until the date the *spouse* remarries." 8 U.S.C. § 1151(b)(2)(A)(i) (emphasis added). Here, instead of referring to the surviving alien-spouse as a widow or widower, or with a qualifying term such as "former" or "surviving," Congress described the surviving alien-spouse as a "spouse." The Secretary, however, contends that Congress's use of the phrase "was the spouse" in the second sentence of § 1151(b)(2)(A)(i) indicates that it considered a "surviving spouse" as separate and distinct from the common, ordinary meaning of the

term "spouse." We disagree. The more natural reading of the second sentence indicates that the word "was" does not merely modify the term "spouse" but modifies the entire phrase in order to establish a marriage-duration requirement for self-petitions, i.e., the alien-spouse "was a spouse . . . *for at least two years.*" 8 U.S.C. § 1151(b)(2)(A)(i) (emphasis added). The grammatical structure of the entire second sentence supports our reading. There, the word "was" modifies the entire phrase, i.e., "and was not legally separated from the citizen at the time of the citizen's death." 8 U.S.C. § 1151 (b)(2)(A)(i). Accordingly, we conclude that surviving alien-spouses, whose citizen-spouse petitioned on his or her behalf prior to death are "spouses," are "immediate relatives" within the meaning of 8 U.S.C. § 1151(b)(2)(A)(i).

**D.      Common, Ordinary Meaning of the Term "Spouse" Includes "Surviving Spouses"**

The common-law meaning of the term "spouse" supports our reading of the INA. First, we observe that the term "spouse" is not defined in the "immediate relative" provision of the INA. *See* 8 U.S.C. § 1151. In the definition section of the INA, however, the term "spouse" is defined only to the extent it excludes "a spouse, wife, or husband by reason of any marriage ceremony where the contracting parties thereto are not physically present in the presence of each other, unless the marriage shall have been consummated." 8 U.S.C. § 1101(a)(35). Because the term "spouse" is not defined in the INA, we must determine the meaning of the term from its ordinary, contemporary, common meaning at the time Congress enacted the statute. *See Perrin v. United States*, 444 U.S. 37, 42 (1979); *Limited, Inc. v. Comm'r*, 286 F.3d 324, 333 (6th Cir. 2002). Enacted in 1965, the original "immediate relative" provision of the INA stated, in relevant part: "'immediate relative' . . . shall mean the children, spouses and parents of a citizen of the United States: Provided, That in the case of parents, such citizen must be at least twenty-one years of age." *See* Act to Amend the Immigration and Nationality Act, Pub. L. No. 89-236. At that time, the ordinary, common meaning of the term "spouse" included a "surviving spouse." According to *Black's Law Dictionary*, a spouse is "one's wife or husband." *Black's Law Dictionary* 1574 (4th ed. 1951). That definition cites *Rosell v. State Industrial Accident Commission*, 95 P.2d 726, 729 (Or.

1939), which, in turn, states: "[t]he legal, as well as the ordinary, meaning of 'spouse' is 'one's wife or husband'; and a 'surviving spouse', therefore, must be the one, of a married pair, who outlives the other." Later, in 1990, when Congress amended the INA to add the second sentence of the "immediate relative" provision, it did not provide an alternative definition of the term "spouse." And, at that time, the sixth edition of *Black's Law Dictionary* provided that a spouse is "one of a married couple who outlives the other." *Black's Law Dictionary* 1402 (6th ed. 1990). Therefore, we conclude that the common, ordinary meaning of the term "spouse" includes a "surviving spouse." As such, "spouse," as used in the "immediate relative" provision of the INA, includes a "surviving spouse."

The Secretary, however, argues that because a marriage ends with the death of one spouse, a surviving spouse is not a "spouse" within the common, ordinary meaning of the term. The Secretary cites the Defense of Marriage Act, 1 U.S.C. § 7, the USA Patriot Act of 2001, Pub. L. 107-56, 115 Stat. 272 § 421, the National Defense Authorization Act for Fiscal Year 2004, Pub. L. 108-136, 117 Stat. 1693, and Ohio law, *Dibble v. Dibble*, 100 N.E.2d 451, 461 (Ohio Ct. App. 1950) (holding death terminates marriage in Ohio). We find this argument unavailing.

First, the Secretary's argument under the Defense of Marriage Act fails because the plain language of "[s]ection 7 emphasizes that spouses shall be of the opposite sex, it does not mandate that spouses lose their status as such with the death of either one of them."[1] *Taing v. Chertoff*, 526 F. Supp. 2d 177, 184 (D. Mass. 2007), *appeal docketed*, No. 08-1179 (1st Cir. Feb. 11, 2008). Second, the language of the USA Patriot Act of 2001 and the National Defense Authorization Act for Fiscal Year 2004 modifies the second sentence of the "immediate relative" provision, not the first. As explained above, the first and second sentences of the "immediate relative" provision are two distinct

---

[1]In *Taing*, the court noted that "H.R. 3396, the Defense of Marriage Act, has two primary purposes. The first is to defend the institution of traditional heterosexual marriage. The second is to protect the right of the states to formulate their own public policy regarding the legal recognition of same sex unions." *Taing*, 526 F. Supp. 2d at 185 n.5. To further those purposes, "H.R. 3396 has two operative provisions. Section 2 entitled 'Powers reserved to the States' and Section 3 [which] defines the term 'marriage' and 'spouse' for the purposes of federal law only, to reaffirm that they refer exclusively to relationships between persons of the opposite sex." *Id*. (citing H.R. REP. No. 104-664, at 2 (1996)).

provisions. Like the second sentence of the "immediate relative" provision, which permits an alien spouse to file a self-petition in the event that his or her spouse did not file a Form I-130 petition on the alien's behalf prior to his death, the Patriot and the National Defense Authorization Acts provide a separate avenue for self-petitioning without requiring the alien-spouse to have been married for two years in the event that the deceased citizen did not petition prior to death.[2]

Finally, the Secretary's argument also fails under Ohio law. According to the Secretary, under Ohio law, a marriage ends with the death of one of the spouses. *Dibble*, 100 N.E.2d at 461. Although federal courts may look to state law for guidance in defining terms, formulating concepts, or delineating policies, courts need not incorporate state-law definitions where to do so would frustrate a federal statute's purposes. *See Ford v. Uniroyal Pension Plan*, 154 F.3d 613, 617 (6th Cir. 1998) (citing *De Sylva v. Ballentine*, 351 U.S. 570 (1956) (noting courts may look to state-law definitions of terms in defining such terms in a federal statute but need not where doing so would frustrate the purpose of the federal statute)). Moreover, the Secretary does not explain why we should elevate Ohio's definition of spouse or marriage above the intent of Congress. Nor does the Secretary argue that Congress considered Ohio law or any other state law when drafting the "immediate relative" provision or during the amendment of that statute. Accordingly, we find that the common, ordinary meaning of the term "spouse" includes "surviving spouses." As such, a surviving alien-spouse is a "spouse" under the "immediate relative" provision.

---

[2]The applicable language of the USA Patriot Act of 2001 and the National Defense Authorization Act for Fiscal Year 2004 is identical. Section 423 of the USA Patriot Act of 2001 provides:

> Notwithstanding the second sentence of section 201(b)(2)(A)(i) of the Immigration and Nationality Act (8 U.S.C. 1151(b)(2)(A)(i)), in the case of an alien who was the spouse of a citizen of the United States at the time of the citizen's death and was not legally separated from the citizen at the time of the citizen's death, if the citizen died as a direct result of a specified terrorist activity, the alien (and each child of the alien) shall be considered, for purposes of section 201(b) of such Act, to remain an immediate relative after the date of the citizen's death, but only if the alien files a petition under section 204(a)(1)(A)(ii) of such Act within 2 years after such date and only until the date the alien remarries. For purposes of such section 204(a)(1)(A)(ii), an alien granted relief under the preceding sentence shall be considered an alien spouse described in the second sentence of section 201(b)(2)(A)(i) of such Act.

*See* USA Patriot Act of 2001, Pub. L. 107-56, 115 Stat. 272 § 421, the National Defense Authorization Act for Fiscal Year 2004, Pub. L. 108-136, 117 Stat. 1693.

**E.        The Adjustment-of-Status Regime Supports Our Reading of the Statute**

The Secretary also argues that the present-tense language used in sections 204(b), 204(e) and 205 suggests that the citizen spouse must be alive at the time the Secretary adjudicates the citizen-spouse's petition for adjustment of status.  Section 204(b) provides, in relevant part, that if "[a]fter an investigation of the facts in each case, . . . [the Attorney General] determines that the facts stated in the petition are true and that the alien in behalf of whom the petition is made is an immediate relative . . . , [she may] approve the petition."  8 U.S.C. § 1154(b).  Additionally, under section 204(e), approval of an alien-spouse's visa petition "shall not be construed to entitle an immigrant . . . to be admitted . . . as an immediate relative . . . if upon his arrival at a port-of-entry . . . he is found not to be entitled to such classification."  8 U.S.C. § 1154(e).  And section 205 permits the Secretary to revoke approval of a visa petition at any time for "good and sufficient cause."  We, however, are not convinced.

We must assume that when drafting the INA, Congress did not intend an absurd or manifestly unjust result.  *Green v. Bock Laundry Mach. Co.*, 490 U.S. 504, 509-10 (1989).  The Secretary's "interpretation creates an arbitrary, irrational and inequitable outcome in which approvable petitions will be treated differently depending solely upon when the government grants the approval."  *Robinson*, 554 F.3d at 371 (Nygarrd, J., dissenting).  The Secretary had the power to grant Mrs. Lockhart's application prior to Mr. Lockhart's death.  *Freeman*, 444 F.3d at 1042.  According to 8 U.S.C. § 1186a(a), (b)(1),

> [an] alien spouse who receives permanent resident status as an immediate relative before the second anniversary of her qualifying marriage does so on a conditional basis, and if the Attorney General determines that prior to the second anniversary of the alien's obtaining status the alien's marriage "has been judicially annulled or terminated, *other than through the death of a spouse*," the Attorney General "shall terminate the permanent resident status of the alien."

*Freeman*, 444 F.3d at 1042 (quoting 8 U.S.C. § 1186a(a), (b)(1)).  "Had it done so, [Mrs. Lockhart's lawful permanent resident] status could not then have been voided by her husband's death, as the statute expressly states."  *Id*.  As such, either the timing of the

Secretary's adjudication of the petition or the timing of the citizen-spouse's death would control the outcome of immediate relative petitions. For example, a prompt adjudication of the petition for adjustment of status results in approval, even if the couple had not been married for two years before the adjustment of status. However, a delay in adjudication results in denial if the citizen spouse happens to die before the couple's two-year anniversary. But a severe delay of two years followed by the citizen's death results in approval because the alien-spouse could self-petition. This is exactly the type of absurdity to be avoided in the construction of statutes. *See Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575 (1982) ("[I]nterpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available."). We cannot ignore the plain meaning of the statute which results in a consistent and rational statutory scheme in favor of a reading that is arbitrary and unjust.

**F.    The INA's Revocation Provision Does Not Affect Pending "Immediate Relative" Petitions**

Next, the Secretary contends that because she has had the right to revoke the approval of a petition for "good and sufficient cause" under 8 U.S.C. § 1155, it follows that she may also deny a *pending* Form I-130. Lockhart counters that the Secretary waived this argument because it was raised for the first time on appeal. Despite our general rule that "[i]ssues not presented to the district court but raised for the first time on appeal are not properly before the court," we have "stated that it may be appropriate to consider a new issue on appeal if it is presented with sufficient clarity and completeness for us to resolve the issue." *McFarland v. Henderson*, 307 F.3d 402, 407 (6th Cir. 2002) (quoting *J.C. Wyckoff & Assocs., Inc. v. Standard Fire Ins. Co.*, 936 F.2d 1474, 1488 (6th Cir. 1991)). We "most commonly exercise [our] discretion to reach issues not raised below" when "the issue is one of law, and further development of the record is unnecessary." *Id.* (quoting *Foster v. Barilow*, 6 F.3d 405, 407 (6th Cir. 1993)). Given that the issue before us is purely a question of law, which requires no further development of the record, we find that this issue presents an appropriate circumstance for exercising our discretion to reach an issue not raised below.

Nonetheless, we find this argument unpersuasive.  Under 8 U.S.C. § 1155:

The Secretary of Homeland Security may, at any time, for what [she] deems to be good and sufficient cause, *revoke the approval* of any petition *approved* by him under section 204 [8 U.S.C. § 1154]. Such revocation shall be effective as of the date of approval of any such petition.

8 U.S.C. § 1155 (emphasis added).  Under the implementing provisions of the INA approval of a petition or self-petition made under section 204 of the Act, 8 U.S.C. § 1154, and in accordance with part 204 of this chapter, is revoked as of the date of approval upon the death of the beneficiary or the self-petitioner.  *See* 8 C.F.R. § 205.1(a)(3)(C).  First, the plain language of 8 U.S.C. § 1155 applies to *approved* petitions for adjustment of status, not *pending* petitions for immediate-relative status.  Second, Congress may have had a reasonable basis to permit the DHS to revoke approved petitions, but not permit the denial of pending petitions.  Under the regulations, the DHS has discretion to refrain from automatically revoking an approved petition for humanitarian reasons.  *See* 8 C.F.R. 205.1(a)(3)(i)(C)(2).[3]  There is no such relief available to alien spouses if the pending petition for adjustment of status is denied upon the death of their citizen spouses.  Moreover, it is not entirely clear to us that the DHS has in fact used this provision to deny *pending* "immediate relative" petitions solely on the basis of the citizen-spouse's death.  The Secretary provides no evidence establishing that the government has, since 1938, denied pending immediate relative petitions solely on the basis of the citizen spouse's death, nor has the Secretary provided any historical analysis linking the "immediate relative" provision to the automatic revocation of approved petitions.  And, because the plain meaning of the statute is clear, there is no

---

[3]8 C.F.R. 205.1 provides:

The approval of a petition or self-petition made under section 204 of the Act and in accordance with part 204 of this chapter is revoked  as of the date of approval: . . .Upon the death of the petitioner, unless: . . . .U.S. Citizenship and Immigration Services (USCIS) determines, as a matter of discretion exercised for humanitarian reasons in light of the facts of a particular case, that it is inappropriate to revoke the approval of the petition. USCIS may make this determination only if the principal beneficiary of the visa petition asks for reinstatement of the approval of the petition and establishes that a person related to the principal beneficiary in one of the ways described in section 213A(f)(5)(B) of the Act is willing and able to file an affidavit of support under 8 C.F.R. part 213a as a substitute sponsor.

8 C.F.R. 205.1(a)(3)(i)(C)(2).

need to resort to legislative history to divine the meaning of the term "spouse" under the "immediate relative" provision.

## G.       *Chevron* **Deference**

Finally, the Secretary contends that even if  8 U.S.C. § 1151 (b)(2)(A)(i) is ambiguous, under *Chevron* principles this Court must defer to the agency's interpretation of that provision in *Matter of Varela*, 13 I. & N. Dec. 453 (B.I.A. 1970).  There, the BIA held that when his or her citizen-spouse dies prior to the adjudication of an adjustment-of-status application, an alien spouse is no longer a "spouse" and is, therefore, no longer an "immediate relative" under 8 U.S.C. § 1151(b)(2)(A)(i).  *Id*. at 454.  Because we find that the meaning of "spouse" under the "immediate relative" provision is plain, we need not defer to the BIA's prior decision.  *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984) (hereinafter "*Chevron*") (providing if "Congress has directly spoken to the precise question at issue," then the plain meaning of the statute controls); *see also Nat'l Cotton Council of Am. v. United States EPA*, 553 F.3d 927, 933 (6th Cir. 2009).  Moreover, even if the statute were ambiguous, a non-precedential decision like *Matter of Varela* is not entitled to *Chevron* deference.  *See United States v. Mead Corp.*, 533 U.S. 218, 226-27 (2001).  In *Matter of Sano*, 19 I. & N.  Dec.  299, 301 (B.I.A. 1985), the BIA held that it did not have the jurisdiction to decide whether a beneficiary alien-spouse remains a "spouse" under § 1151(b)(2)(A)(i) when his or her citizen-spouse dies prior to the adjudication of an adjustment-of-status application.  Additionally, the BIA's decision in *Varela* lacks the necessary statutory analysis that would entitle it to either *Chevron* or *Skidmore* deference.  *Freeman*, 444 F.3d at 1038; *see also Mead Corp.*, 533 U.S. at 228 ("The weight [accorded to an administrative] judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.") (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)).

### III. CONCLUSION

Thus, for the foregoing reasons, we hold that a surviving alien-spouse, whose citizen spouse filed a Form I-130 petition prior to his or her death, is a "spouse" under the "immediate relative" provision of the INA. Therefore, we **AFFIRM** the district court's grant of summary judgment in favor of Lockhart.