[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 2, 2010
JOHN LEY
CLERK

No. 09-11349

_____

D. C. Docket No. 07-00443-CV-T-23-TGW

SUSAN WARD,
GAVIN WARD,

                                                 Plaintiffs-Appellants,

versus

U.S. ATTORNEY GENERAL,
SECRETARY, DEPARTMENT OF HOMELAND SECURITY,
EMILIO T. GONZALES, Commissioner of the
U.S. Citizenship & Immigration Services,
EVELYN UPCHURCH, District Director of the
Texas Regional Service Center of the USCIS,
JEFF GORSKY, Advisory Opinion Office, U.S.
Department of the State Visa Office, National
Visa Center,

                                                 Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(June 2, 2010)

Before BIRCH, BARKETT and KRAVITCH, Circuit Judges.

PER CURIAM:

The Immigration and Nationality Act permits children who reside abroad to derive the same immigrant visa status as a parent who is the primary beneficiary of an employment-based visa petition. In this case, we must decide whether the death of a primary-beneficiary parent extinguishes his child's right to his status. We hold that it does.

## I. Background

Ian Ward, a British citizen, was the primary beneficiary of an employment-based petition under 8 U.S.C. § 1153(b)(1)(C).[1] After obtaining a visa, Ian submitted his Application to Register Permanent Residence or Adjust Status (Form I-485) in February, 2002. *See* 8 C.F.R. § 245.2(a)(5)(ii). Because Ian's son, Gavin, was under the age of 21, Ian also filed an Application for Action on an Approved Application or Petition (Form I-824) in February 2002 to begin the process that would allow Gavin to "follow[] to join" him in the United States. 8 U.S.C. 1153(d) ("A spouse or child . . . shall . . . be entitled to the same status . . . if accompanying or following to join[] the spouse or parent."); *see also id*. § 1101(b)(1) ("The term 'child' means an unmarried person under twenty-one years

---

[1] Because Ian was classified as a "multinational executive/manager," an immigrant visa was immediately available to him. *See* 8 U.S.C. § 1153(b)(1)(C).

of age . . . .").  Gavin—a "derivative" beneficiary of his father's employment-based

petition—remained in the United Kingdom to finish college and turned 21 in April

2002 while Ian's application to become a legal permanent resident was still

pending.

In August 2002, Congress passed the Child Status Protection Act (CSPA),

Pub. L. No. 107-208, 116 Stat. 927 (2002) (codified at 8 U.S.C. §§ 1151, 1153-54,

1157-58), which provides "age-out" protection for derivative child beneficiaries

adversely affected by administrative delays in the adjudication of immigrant

petitions.  Section 3 of the CSPA provides:

> (h) Rules for determining whether certain aliens are children
>     (1) In general
>     For purposes of [qualified immigrants or children following to
>     join], a determination of whether an alien satisfies the age
>     requirement in the matter preceding subparagraph (A) of
>     section 1101(b)(1) of this title shall be made using—
>           (A) the date on which an immigrant visa number became
>           available for the alien's parent. . . but only if the alien has
>           sought to acquire the status of an alien lawfully admitted
>           for permanent residence within one year of such
>           availability.

8 U.S.C. § 1153(h).  Section 8 of the CSPA describes the statute's retroactive

effect:

> The amendments made by this Act shall take effect on the date of the
> enactment of this Act and shall apply to any alien who is a derivative
> beneficiary or any other beneficiary of—
> . . .

3

(3) an application pending before the Department of Justice or the Department of State on or after such date.

116 Stat. at 930.

In October 2002, the Immigration and Naturalization Service (INS) denied the I-824 Ian had filed for Gavin on the ground that Ian's I-485 application for permanent-resident status was still pending. The INS informed Ian, however, that he could file a new I-824 for Gavin after the I-485 was approved. In April 2004, the Bureau of U.S. Citizenship and Immigration Services (USCIS), the INS's successor agency,[2] notified Ian that his I-485 was approved and that he had become a legal permanent resident of the United States.

In May 2004, Ian filed a new I-824 for Gavin. USCIS approved this I-824 in August and advised the State Department's National Visa Center that Gavin was eligible for consular processing of an immigrant visa. Gavin then requested DS-230 processing, but the State Department refused, concluding that Gavin did not qualify under the CSPA because he had turned 21 before its passage and because he had no pending application that would qualify him under the CSPA's retroactivity provision. In May 2006, as the Wards were still contesting this decision, Ian tragically died of cancer.

---

[2] In March 2003, Congress replaced the INS with USCIS. Homeland Security Act of 2002, Pub. L. No. 107-296, §§ 451, 471, 116 Stat. 2135, 2195, 2205.

Gavin and his mother filed this action in 2007, requesting declaratory relief and a writ of mandamus requiring the defendants to allow Gavin to file his DS-230 application. The court granted the defendants' summary judgment motion, concluding that Gavin could not "follow to join" a deceased parent. It did not decide whether the CSPA protected Gavin from "aging out" when he turned 21. The Wards appeal.

## II. Discussion

We review the district court's summary judgment order *de novo*. *Shuford v. Fid. Nat'l Prop. & Cas. Ins. Co.*, 508 F.3d 1337, 1341 (11th Cir. 2007). Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

The Wards first argue that the district court erred because the CSPA "froze" Gavin's status as a child following to join Ian—even after Ian's death. Whether the CSPA applied to Gavin, however, is immaterial. Even if it had, Gavin could not have "follow[ed] to join" a deceased parent under 8 U.S.C. § 1153(d).[3]

Before the CSPA's enactment, the "following to join" requirement had been

---

[3] Thus, we need not reach the question whether the CSPA prevented Gavin from "aging out" of eligibility to "follow to join" his father.

interpreted to mean that the derivative beneficiary and the primary beneficiary had to maintain the child-parent or spousal relationship throughout the entire application process. *See, e.g., Matter of Alarcon*, 20 I. & N. Dec. 557, 562 (BIA 1992) ("An application for admission to the United States is a continuing application, and admissibility is determined on the basis of the facts and the law at the time the application is finally considered."). When a derivative beneficiary's immigration status depended on a particular familial relationship, the death of the primary beneficiary prevented the derivative beneficiary from obtaining a visa through that relationship. *See Fidalgo/Velez v. INS*, 697 F.2d 1026, 1030 (11th Cir. 1983) (assuming that the death of a principal immediate relative would lead to the immediate revocation of a derivative visa petition); *Matter of Khan*, 14 I. & N. Dec. 122 (BIA 1972) ("Death terminated the father's immigrant status and thereby stripped [the child] of his status."); 9 U.S. Dep't of State, Foreign Affairs Manual 40.1 n.7.1. ("[I]f the principal has died or lost status, there is no longer a basis to following to join.").

The Wards argue that the CSPA altered this established framework by allowing a derivative child to retain his or her following-to-join status when a principal parent dies. The text of the CSPA offers no support for this argument. Its preamble states that it amends the Immigration and Nationality Act "to

6

determine whether an alien is a child . . . based on the *age of the alien*." 116 Stat. 927 (emphasis added). The remainder of the statute contains no language allowing a child to follow to join a deceased principal parent. Furthermore, Congress enacted the CSPA to address "the predicament of these aliens, who through no fault of their own, lose the opportunity to obtain an immediate relative visa before they reach age 21." H.R. Rep. No. 107-45, at 2 (2002). The CSPA, therefore, never addressed the issue of children losing their following-to-join status when a primary-beneficiary parent dies; instead, Congress sought to protect them from losing this status due to age. Accordingly, the CSPA does not support the Wards' position. *See Gonzalez v. McNary*, 980 F.2d 1418, 1421 (11th Cir. 1993) ("Absent a clearly expressed legislative intent to the contrary, the plain and unambiguous language of the statute must prevail.").

The Wards also argue that we should extend a line of cases in which courts have allowed spouses to file for a visa after the qualifying spouse has died. *See Freeman v. Gonzales*, 444 F.3d 1031 (9th Cir. 2006) (concluding that an alien widow whose U.S.-citizen husband had filed permanent-residency papers for her was able to continue processing to obtain legal residency); *Taing v. Napolitano*, 567 F.3d 19 (1st Cir. 2009) (following *Freeman* in allowing surviving spouse of deceased U.S. citizen to become a permanent resident); *Lockhart v. Napolitano*,

7

561 F.3d 611 (6th Cir. 2009) (applying *Freeman* in concluding that an alien whose U.S.-citizen spouse had died remained a spouse for immigration purposes).  This line of cases, however, is distinguishable.  First, none of these cases involve following-to-join status.  Second, spouses and former spouses of U.S. citizens have long been treated more favorably than derivative beneficiaries of lawful permanent residents.  For instance, widows and widowers who were married to a U.S. citizen for at least two years may self-petition regardless of whether their spouses ever filed a petition on their behalf.  8 U.S.C. § 1154(a)(1)(A)(ii).  Thus, we decline to extend this line of precedent to the following-to-join context.

Finally, the Wards argue that the district court erred by failing to order USCIS to grant Gavin a visa under the humanitarian exception.  *See* 8 C.F.R. § 205.1(a)(3)(i)(C)(2) (providing for automatic revocation upon the death of the petitioner unless USCIS "determines, as a matter of discretion . . . that it is inappropriate to revoke the approval of the petition").  This argument, however, fails because the regulation only affords an exception to revocation for *approved* petitions.  *See* 8 C.F.R. § 205.1(a) ("[T]he approval of a petition . . . is revoked as of the date of approval . . . .").  Because Gavin's immigration petition was never approved, the humanitarian exception does not apply to him.  *See Dodig v. I.N.S.*, 9 F.3d 1418, 1420 (9th Cir. 1993) (concluding that 8 C.F.R. § 205.1(a)(3)(i)(C)(2)

does not operate unless there has been an approved immigration petition).

Accordingly, the district court's summary judgment order is

**AFFIRMED.**