RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 19a0010p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

JULIO EDGARDO MOLINA HERNANDEZ,

*Petitioner*,

v.

MATTHEW G. WHITAKER, Acting Attorney General,

*Respondent*.

No. 17-3977

On Petition for Review from the Board of Immigration Appeals;
No. A 205 657 285.

Decided and Filed: January 23, 2019

Before: SUHRHEINRICH, GIBBONS, and KETHLEDGE, Circuit Judges.

_____

## COUNSEL

**ON BRIEF:** Russell Reid Abrutyn, ABRUTYN LAW PLLC, Berkley, Michigan, for Petitioner. Kathryn M. McKinney, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

_____

## OPINION

_____

JULIA SMITH GIBBONS, Circuit Judge. Julio Molina Hernandez ("Molina") appeals the Board of Immigration Appeals ("BIA") decision (1) finding him removable on the basis that his felonious assault conviction under Mich. Comp. Laws § 750.82 is a crime involving moral turpitude ("CIMT"), (2) denying him asylum and withholding of removal, and (3) denying him protection under the Convention Against Torture ("CAT"). Molina also argues that the term "CIMT" is unconstitutionally vague. Because Molina reasonably relied on this circuit's decision

in *Hanna v. Holder*, 740 F.3d 379 (6th Cir. 2014), which held that the Michigan felonious assault statute is not categorically a CIMT, we reverse the BIA and find that Molina is not removable based on his prior conviction. Accordingly, Molina's applications for asylum, withholding of removal, and protection under the CAT are moot and we will not issue a ruling on those arguments.

I.

Molina was born in El Salvador and grew up in an area where the "18ᵗʰ Street" gang was active. The gang attempted to recruit Molina, and Molina claims that his uncle was murdered in 2008 because he refused to join the gang. Soon thereafter, Molina moved to San Vicente, which was located in MS-13 gang territory. Again, the MS-13 gang pressured Molina to join and beat him up several times when he refused. On September 25, 2012, when he was fifteen, Molina illegally entered the United States. He was granted permanent resident status on July 9, 2014 as a Special Immigrant Juvenile. *See* 8 U.S.C. §§ 1101(a)(27)(J), 1255(h). He was eventually declared dependent by a juvenile court of the United States and placed in foster care.

On March 16, 2016, Molina pled guilty to assault with intent to rob, unarmed, under MCL § 750.88. Immigration and Customs Enforcement ("ICE") initiated removal proceedings under 8 U.S.C. § 1227(a)(2)(A)(i), alleging that removal was appropriate because Molina had been convicted of a CIMT within five years of his admission for which a sentence of at least one year could be imposed. However, Molina's conviction was vacated because he did not receive the constitutionally required advice about the immigration consequences of his plea. He then pled guilty to felonious assault under MCL § 750.82. ICE continued to assert that he was removable, arguing that felonious assault also constituted a CIMT.

The immigration judge ("IJ") denied Molina's motion to terminate his removal proceedings, and his application for asylum, withholding of removal, and protection under the CAT, and ordered him removed. The IJ determined that Molina was ineligible for asylum, withholding of removal, and protection under the CAT because his conviction was for a particularly serious crime. Alternatively, the IJ denied Molina's petition for asylum and withholding of removal on the merits, finding that there was no nexus between the harm that

Molina experienced and his fears of returning to El Salvador. The IJ also denied Molina's application for CAT protection on the merits because Molina had not demonstrated that the government of El Salvador would torture him or acquiesce to such treatment.

Molina timely appealed to the BIA, but the BIA denied his appeal and sustained the CIMT removal charge. The BIA also agreed that Molina had been convicted of a particularly serious crime and denied protection under CAT. Molina now appeals this BIA decision.

## II.

In appeals from the BIA, this court reviews questions of law *de novo*. *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009). The BIA's factual determinations are reviewed deferentially for substantial evidence—reversal is appropriate not where the court may have decided differently, but only if the court is compelled to the opposite conclusion. *Koulibaly v. Mukasey*, 541 F.3d 613, 619 (6th Cir. 2008). Additionally, we review both the BIA's decision and the IJ's decision to the extent that the IJ's decision was adopted by the BIA as the final agency determination. *See Khalili*, 557 F.3d at 435.

Under 8 U.S.C. § 1227(a)(2)(A)(i)(I), "[a]ny alien who is convicted of a crime involving moral turpitude committed within five years . . . after the date of admission . . . is deportable." Our decision here involves interpreting a statute administered by a federal agency, so we review the agency's interpretation under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837 (1984). Under that standard, if "Congress has directly spoken to the precise question at issue" in the text of the statute, we give effect to Congress's answer without regard to any divergent answers offered by the agency or anyone else. *Id*. at 842–43. But if the statute is ambiguous with respect to the specific issue, "the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843. This court has previously held that the term "crime of moral turpitude," as used in 8 U.S.C. § 1227(a)(2)(A)(i)(I) is ambiguous, and thus that the BIA's interpretation of that term is generally entitled to deference. *See Ruiz-Lopez v. Holder*, 682 F.3d 513, 516 (6th Cir. 2012). Yet the Board's interpretation of that term in this case is not entitled to deference, because it comes in an unpublished, single-member decision that lacks precedential value. *See Lockhart v.*

*Napolitano*, 753 F.3d 251, 262 (6th Cir. 2009). Therefore, the court "review[s] de novo the BIA's interpretation of state criminal statutes in decisions regarding CIMTs." *Id.* at 477 (citing *Wala v. Mukasey*, 511 F.3d 102, 105 (2d Cir. 2007); *Partyka v. Attorney Gen. of the United States*, 417 F.3d 408, 411 (3d Cir. 2005)); *see also Kellermann v. Holder*, 592 F.3d 700, 703 (6th Cir. 2010), *rev'd on other grounds*, *Sellers v. Lynch*, 630 F. App'x 464 (6th Cir. 2015) ("[W]e review *de novo* whether the elements of a federal crime fit the BIA's definition of a CIMT." (citing *Smalley v. Ashcroft*, 354 F.3d 332, 336 (5th Cir. 2003))).

> At issue in this case is the Michigan felonious assault statute:

> [A] person who assaults another person with a gun, revolver, pistol, knife, iron bar, club, brass knuckles, or other dangerous weapon without intending to commit murder or to inflict great bodily harm less than murder is guilty of a felony punishable by imprisonment for not more than 4 years or a fine of not more than $2,000.00, or both.

MCL § 750.82. Here, the BIA held that MCL § 750.82 constituted a CIMT because the "dangerous weapon" element elevated the crime from simple assault to CIMT status. However, the BIA's decision is at odds with this circuit's precedent in *Hanna v. Holder*.[1] In *Hanna*, the alien, Hanna, had been convicted of Michigan felonious assault under MCL § 750.82 and had conceded removability through his first attorney. 740 F.3d 379, 382 (6th Cir. 2014). Later, when represented by new counsel, he argued that his MCL § 750.82 conviction did not constitute a CIMT. *Id.* at 384–85. The BIA held that Hanna's admission of removability was binding. *Id.* at 385. This circuit reversed, determining that the Michigan statute was divisible and that it encompassed both CIMT and non-CIMT offenses. *Id.* at 392. Specifically, the court pointed out that if Hanna's crime involved only "intent to place the victim in apprehension of an immediate battery" as opposed to "intent to injure," then his offense would not qualify as a CIMT. *Id.* (citing *Singh*, 321 F. App'x at 475–76, 480.) The court then remanded the case to the BIA, *id.* at 393, as the immigration court "ha[d] yet to consider directly whether Hanna's underlying offense is a CIMT," and noted that nothing in the record indicated whether Hanna's conviction had involved intent to injure or merely intent to instill apprehension, *id.* at 392.

---

[1]We do not defer to Molina's BIA decision because it is an unpublished, single member decision that lacks precedential value. *Lockhart v. Napolitano*, 573 F.3d 251, 262 (6th Cir. 2009) ("Moreover, even if the statute were ambiguous, a non-precedential decision . . . is not entitled to *Chevron* deference.").

The BIA argues that *Hanna* only suggested that MCL § 750.82 was not a CIMT, without affirmatively so holding, and remanded for the BIA to decide the question officially. This is incorrect—the *Hanna* court explicitly held that § 750.82 is not categorically a CIMT. For example, the *Hanna* decision includes statements such as "Mich. Comp. Laws § 750.82 is a divisible statute, encompassing offenses that are and are not CIMTs," *Hanna*, 740 F.3d at 392, and "We now recognize Mich. Comp. Laws § 750.82 as divisible, and as such, the statute encompasses non-CIMT offenses," *id.* at 390. The most natural reading of these statements indicates that the court found the statute to include offenses that are not CIMTs.

Although the *Hanna* court remanded the case, it instructed the BIA to determine under which divisible part of the statute Hanna had been convicted. In other words, if the BIA found that Hanna had only the intent to instill apprehension, rather than the intent to injure, the *Hanna* court would have the BIA conclude that he had not been convicted of a CIMT. In fact, the court's specific instructions for the BIA to review *the record* implies that the BIA was supposed to determine the *factual* question of Hanna's intent level, rather than the *legal* question of whether intent to instill apprehension alone is sufficient for an offense to qualify as a CIMT. *See id.* at 393 ("The immigration courts should have the opportunity to review the record and determine [whether Hanna's underlying offense is a CIMT]."). Moreover, the *Hanna* court repeatedly focused on the unresolved factual issue of Hanna's intent: "[a]lthough it is not dispositive, Hanna's record of conviction does not suggest facts qualifying his offense as a CIMT," and "[i]n our review of the record, we find nothing suggesting that Hanna's November 1996 assault necessarily involved the intent to injure as opposed to the intent to place the victim in apprehension of an immediate battery." *Id.* at 392. This focus on the record and the equivocal statements about the exact intent underlying Hanna's assault conviction show that that was the question left for the agency to decide upon remand. Thus, in *Hanna*, we held that MCL § 750.82 encompasses convictions that are not CIMTs, and we did not remand the case to the agency to decide that issue.

The IJ also argues that *Hanna* is not binding because it was incorrect about the divisibility of MCL § 750.82. In light of more recent Supreme Court decisions, both parties agree that the statute in question is not divisible. *See United States v. Harris*, 853 F.3d. 318, 320 (6th Cir.

2017) (treating MCL § 750.82 as indivisible.)  However, given that the *Hanna* court explicitly held that MCL § 750.82 included conduct that did not qualify as a CIMT, whether the statute is divisible or not is irrelevant.  In fact, if the statute is indivisible, that means that *no* conviction under it can constitute a CIMT.  *See In Re Solon*, 24 I. & N. Dec. 239, 241 (BIA 2007) ("[A] conviction will be found to be for a crime involving moral turpitude only if the full range of the conduct prohibited in the statute supports such a finding."); *see also Lovano v. Lynch*, 846 F.3d 815, 817–18 (6th Cir. 2017) (applying the "categorical approach" to determine whether a state assault-and-battery statute was a CIMT and considering "whether the full range of conduct encompassed by the statute constitutes a [CIMT]." (quoting *Serrato–Soto v. Holder*, 570 F.3d 686, 689 (6th Cir. 2009))).  The *Hanna* court's error in determining the statute to be divisible does not affect its analysis of whether the statute encompasses conduct that would not qualify as a CIMT; the lack of divisibility merely means that we need not determine whether Molina was convicted under the intent to threaten or the intent to injure prong of the statute.

In *Hanna*, we held that MCL § 750.82 is not categorically a CIMT.  Today, we conclude that the Michigan statute is not divisible. Thus, we hold that MCL § 750.82 is not a CIMT, and that Molina is not removable based on a conviction for a CIMT.

III.

Accordingly, we reverse the BIA and remand for further proceedings in accordance with this opinion.